IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

Winding Creek Solar LLC,

        Plaintiff,

  v.

California Public Utilities Commission,

        Defendants.
_____/

No. C 13-04934  RS

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

I. INTRODUCTION

Winding Creek Solar LLC ("Winding Creek") is the owner and developer of a planned solar project in Lodi, California. In anticipation of construction,[1] Winding Creek sought declaratory and injunctive relief against the California Public Utilities Commission ("CPUC"), claiming that the agency's policies governing the wholesale price of energy purchased from small facilities like that planned by Winding Creek violates the federal Public Utilities Regulatory Policies Act of 1978 and are therefore preempted by the Federal Power Act.

The CPUC now moves to dismiss the complaint for lack of standing, subject matter jurisdiction, and failure to state a plausible claim for relief. The CPUC also raises an Eleventh Amendment defense. According to the CPUC, no amendment consistent with the allegations of

---

[1] It appears the project was not yet online at the time the complaint was filed in October 2013.

NO. C 13-4934 RS
ORDER GRANTING MOTION TO DISMISS

1  the complaint can cure these fundamental substantive defects.  Pursuant to Civil Local Rule 7-
2  1(b), the CPUC's motion to dismiss was found suitable for disposition without oral argument.
3        Although the CPUC is correct that the complaint as alleged fails to satisfy either
4  constitutional or statutory standing, and violates the CPUC's immunity from private suit under
5  the Eleventh Amendment, it does not follow that amendment is not possible.  Defendant's
6  motion to dismiss is therefore granted with leave to amend.

## II. BACKGROUND

A. <u>Statutory and Regulatory Framework</u>

      The Federal Power Act (FPA) declares that the sale of energy in interstate commerce for ultimate distribution to the public is a matter of federal regulation to the extent such matters "are not subject to regulation by the States."  16 U.S.C. § 824(a).  Although the FPA vests the Federal Energy Commission (FERC) with jurisdiction to set the wholesale rate for interstate sales of electricity, 16 U.S.C. § 824(d), the Public Utility Regulatory Policy Act of 1978 (PURPA) created an exception to this general rule by confirming the primary role of state authorities to set wholesale rates with respect to small power production facilities.  The Ninth Circuit explains the purpose of PURPA as follows:

> Title II of PURPA was enacted to encourage the development of cogeneration and small power production facilities, and thus to reduce American dependence on fossil fuels by promoting increased energy efficiency.  To achieve this objective, Congress sought to eliminate two significant barriers to the development of alternative energy sources: (1) the reluctance of traditional electric utilities to purchase power from and sell power to non-traditional facilities, and (2) the financial burdens imposed upon alternative energy sources by state and federal utility authorities.

*Indep. Energy Producers Ass'n, Inc. v. California Pub. Utilities Comm'n*, 36 F.3d 848, 850 (9th Cir. 1994) (hereinafter *IEP*) (citing *Federal Energy Regulatory Comm'n v. Mississippi*, 456 U.S. 742, 750–51 (1982)).

      PURPA directed FERC to issue regulations, in consultation with the states, to implement these goals.  *See* 16 U.S.C. § 824a-3(a); 18 C.F.R. pt. 292.  Such regulations include rules

requiring utilities to purchase electricity from qualifying facilities, including cogeneration and small power production facilities that meet prescribed efficiency, operational and other requirements. *See* 16 U.S.C. §§ 796(17)(A), (C), 796(18)(B), (C), 824a-3(*l*); 18 C.F.R. pt. 292. PURPA further requires a "state regulatory authority," in this case, the CPUC, to implement FERC regulations for its regulated utilities and to set the rates for utility purchases from qualified facilities according to those federal regulations. *See* 16 U.S.C. § 824a-3(a)–(b), (f). "PURPA delegates to the states broad authority to implement section 210 of the statute. . . . Thus, the states play the primary role in calculating avoided costs and in overseeing the contractual relationship between [qualified facilities] and utilities operating under the regulations promulgated by the Commission." *IEP*, 36 F.3d at 856.

With respect to the rates for purchases by electric utilities from a qualifying small power production facility, PURPA requires FERC to promulgate rules establishing that such rates "shall be just and reasonable to the electric consumers of the electric utility and in the public interest" and "shall not discriminate against qualifying cogenerators or qualifying small power producers," and that no such rule "shall provide for a rate which exceeds the incremental cost to the electric utility of alternative electric energy." 18 U.S.C. § 824a-3(b). The resulting regulation allows qualified facilities to provide energy either (1) as available, at a rate based on the purchasing utility's avoided costs calculated at the time of delivery; or (2) pursuant to a legally enforceable obligation for delivery of energy or capacity over a specified term. 18 C.F.R. § 292.304(d). If a qualified facility elects to provide energy or capacity pursuant to a legally enforceable obligation, it may do so at a rate based on either "(i) The avoided costs calculated at the time of delivery; or (ii) The avoided costs calculated at the time the obligation is incurred." 18 C.F.R. § 292.304(d)(2).

PURPA does not require that a state commission adopt a specific rate or rate scheme. The CPUC may implement PURPA "by issuing regulations, resolving disputes on a case-by-case basis, or by adopting any other means that reasonably give effect to FERC's regulations." *FERC v. Mississippi*, 456 U.S. at 749–51; *see also IEP*, 36 F. 3d at 856 (CPUC has "broad ratemaking

No. C 13-4934 RS
ORDER GRANTING MOTION TO DISMISS

authority under PURPA"). FERC's regulations similarly afford state commissions a "wide degree of latitude" in determining how to implement PURPA. *Cal. Pub. Util. Comm'n*, 133 FERC ¶ 61,059, at ¶ 24 (2010). As long as an implementation plan is consistent with federal law, FERC does not "second-guess" the state commission. *Id.*

In this case, Winding Creek challenges the CPUC's exercise of its discretionary authority as embodied in a series of decisions addressing amendments in 2008 and 2011 to section 399.20 of the California Public Utilities Code. See CPUC D.10-12-035, D.13-01-041, and D.13-05034 (collectively, the "Re-MAT Decisions"). The Re-MAT decisions establish a two-step process to determine the rate at which a utility may offer to purchase power from a qualified small producer. First, the CPUC determined an initial fixed price by reference to pricing results from the CPUC's November 2011 Renewable Auction Mechanism auction. The CPUC used this calculation to set an identical fixed price for three separate categories of renewable qualified facilities: baseload, peaking as available, and non-peaking as available. The starting price was further adjusted for time of delivery factors. Second, the Re-MAT Decisions create a mechanism to adjust pricing either up or down every two months based on the market response to the previously offered price. This two-step process determines the price at which a utility may offer to purchase power from a qualified facility in any given month. Contracts at this price are then offered on a first come, first served basis to qualified facilities.

B. Factual Background

The following facts are taken as true from the complaint. Winding Creek is the owner and developer of a planned 1.0 megawatt solar energy project in Lodi, California. Winding Creek's solar project had received all required approvals needed for construction (the complaint makes no averment that construction has commenced or that the facility was operable). Winding Creek's Lodi facility is intended to constitute a "small power production facility" within the meaning of Section 210(l) of PURPA. *See* 16 U.S.C. 796(17). The solar facility has been self-certified as a qualified facility. FERC Docket No. QF13-403-000.

Before commencing this suit, Winding Creek contacted both the CPUC and Pacific Gas and Electric regarding the rate available for power purchased from its planned facility, and, in particular, whether a "long-run rate" was available. In January 2013, Winding Creek received two separate email responses from the CPUC confirming that a long-run rate is not available to qualified facilities and directing Winding Creek to public information regarding the Re-MAT decisions. (Complaint, ¶ 60 & Exh. A.) In June 2013, Winding Creek received an email response from PG&E, which indicated that contracts pursuant to the Re-MAT decisions "are all paid the Short Run Avoided Cost." (Complaint, Exh. B.) Shortly thereafter, Winding Creek petitioned FERC to bring an enforcement action against the CPUC. *See* FERC Docket No. EL13-71. FERC declined to do so. *See Winding Creek Solar LLC*, 144 FERC ¶ 61,122 (2013). Winding Creek then filed the instant complaint to challenge what it alleges to be the CPUC's failure to comply with its obligations under PURPA.

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction over the asserted claims. A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). A district court accepts all allegations of fact in the complaint as true and construes them in the light most favorable to the plaintiff. *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Pleadings must be so construed so as to do justice." Fed. R. Civ. P. 8(e). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 566 U.S. 652, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for

1  "more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a

2  context-specific task requiring the court "to draw in its judicial experience and common sense."

3  *Id.* at 1950.

4  In dismissing a complaint, leave to amend must be granted unless it is clear that the

5  complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corporations*, 66

6  F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be

7  ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

## IV. DISCUSSION

A. Subject Matter Jurisdiction

  1. *Article III Standing*

The CPUC argues Winding Creek lacks Article III standing. To satisfy constitutional standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180–81 (2000). As the party seeking to invoke the Court's jurisdiction, Winding Creek bears the burden of establishing constitutional standing and therefore subject matter jurisdiction over its claim. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

Although Winding Creek avers its planned solar project in Lodi "has received all required approvals needed for construction," it is a fair reading of the complaint that neither construction nor power production has commenced at the facility. While in its opposition to the instant motion, Winding Creek asserts that without a long-term power purchase agreement (presumably, one based on its preferred long-run rate) it cannot secure financing for the facility, it makes no such averment in the complaint. Without averments of actual or imminent injury not contingent upon future events, the complaint as alleged falls short of Winding Creek's burden to show constitutional standing.

Although "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 (1992) (internal quotations omitted), and certain other complaint averments suggest amendment may not be available to rectify the standing defect, leave to amend is warranted at this early stage. As such, it is prudent to address, briefly, the remaining grounds of the CPUC's motion to dismiss.

2. *Johnson Act*

The CPUC next argues Winding Creek's claim that the feed-in-tariff program constitutes an unconstitutional taking of property without compensation is barred by the Johnson Act, 28 U.S.C. § 1342. The Johnson Act provides:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where: (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and, (2) The order does not interfere with interstate commerce; and, (3) The order has been made after reasonable notice and hearing; and, (4) A plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1342. The CPUC concedes the Johnson Act does not apply to either federal statutory or mixed statutory-federal claims, including Winding Creek's preemption claim.

A careful reading of the complaint suggests Winding Creek argues CPUC's rate calculation *would amount* to an unconstitutional taking of property without compensation as a rhetorical device to demonstrate why the Re-MAT policies are contrary to the rate-setting provisions of the CPUC. (See Complaint, ¶ 112–114.) Notably, Winding Creek does not include the Takings Clause among its request for declaratory relief. (See Complaint, Prayer for Relief, at 23–24.) Rather, Winding Creek's claims are fairly grounded in the federal energy statutory and regulatory scheme. Were Winding Creek to offer an amended complaint asserting a claim under the Takings Clause, jurisdiction over that claim would, of course, be subject to such limitations as are imposed by the Johnson Act.

B. Eleventh Amendment

The CPUC next asserts, as an affirmative defense, that it is immune from suit under the Eleventh Amendment, which bars private suits against a state and its agencies and instrumentalities absent waiver or consent. *See NAACP v. Los Angeles Unified School Dist.*, 714 F.2d 946, 950 (9th Cir. 1983) (citing *Quern v. Jordan*, 440 U.S. 332, 339–40 (1979)). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). As an arm of the state, *Sable*, 890 F.2d 184, 191, the CPUC is similarly immune from suit absent a showing of consent or waiver.

In response, Winding Creek argues that, to the extent the Eleventh Amendment would apply to the CPUC, it has been waived. Winding Creek points to the state's voluntary choice to engage in energy regulation subject to PURPA, including its enforcement provisions, as constituting a waiver by the state of any Eleventh Amendment defense. The courts, however, refrain from finding constructive waiver where the statutory scheme does not make such waiver explicit. *See Coll. Sav. Bank v. Fla. Pre-paid Postsecondary Educ. Expense*, 527 U.S. 666, 675–86 (1999); *Pennhurst*, 465 U.S. at 99. Nor did Congress make receipt of federal funds to implement PURPA conditional upon a waiver of sovereign immunity. *See* 42 U.S.C. § 6807.

Nevertheless, there is an exception to this general rule under *Ex Parte* Young, 209 U.S. 123 (1908), when a complaint alleges an ongoing violation of federal law and seeks prospective relief only. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645–46, (2002). Implicit in Winding Creek's proposal to substitute the CPUC Commissioners as defendants is an acknowledgement that *Ex Parte Young* does not apply to the complaint as currently alleged.

The CPUC further argues that Eleventh Amendment concerns are particularly applicable where a litigant seeks federal judicial review of a state agency's adherence to state law. *See Pennhurst*, 465 U.S. at 106. Yet, Winding Creek seeks only to enforce compliance with federal statutory and regulatory requirements; it does not allege the CPUC's Re-MAT decisions violate state law.

C. Failure to State a Claim

1. *Statutory Standing*

While an absence of Article III standing requires dismissal for lack of subject matter jurisdiction, a motion to dismiss on statutory grounds arises under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The burden is therefore on the CPUC to show that no plausible claim may arise from the facts as pled in the complaint.

PURPA provides a private enforcement mechanism through which "[a]ny electric utility, qualifying cogenerator, or qualifying small power producer" may petition FERC to enforce the relevant regulatory scheme. 16 U.S.C. § 824a-3(h)(B). If FERC does not initiate an enforcement action within 60 days, the petitioner may bring an action in the appropriate United States court to require the state regulatory authority to comply with those requirements, and the court may granted injunctive or other relief as appropriate. *Id.* It is undisputed that Winding Creek complied with these procedural requirements. The CPUC contends, however, that Winding Creek is not a "qualifying small power producer" as defined by the federal statutory and regulatory scheme and therefore lacks statutory standing to pursue this action.

The FPA defines "small power production facility" to mean "a facility which is an eligible solar, wind, waste, or geothermal facility, or a facility which—(i) produces electric energy solely by the use, as a primary energy source, of biomass, waste, renewable resources, geothermal resources, or any combination thereof; and (ii) has a power production capacity which, together with any other facilities located at the same site (as determined by the Commission), is not greater than 80 megawatts." 16 U.S.C. §17(A). It goes on to define a "qualifying small power production facility" as a "facility that the Commission determines, by rule, meets such requirements (including requirements respecting fuel use, fuel efficiency, and reliability) as the Commission may, by rule, prescribe." 16 U.S.C. § 17(C). Finally, it defines a "qualifying small producer" as "the owner or operator of a qualifying small power production facility." 16 U.S.C. § 17(D). Relying on these definitions, FERC has repeatedly held that only a facility that produces electricity has qualified facility status. *See, e.g., Citizens for Clean Air &*

No. C 13-4934 RS
ORDER GRANTING MOTION TO DISMISS

9

*Reclaiming Our Env't v. Newbay Co.*, 56 FERC ¶ 61,428, at ¶¶ 62,532–33 (1991) ("[t]he critical date for determining [qualified facility] status for a facility not already producing electric energy is the date that it first commences production of electric energy"); *Georgetown Cogeneration, L.P.*, 54 FERC ¶ 61,049, at ¶ 61,185 (1991) (same); *CMS Midland, Inc.*, 50 FERC ¶ 61,098, at ¶¶ 61,277-78 (1990). FERC explains:

> For purposes of this discussion, the operative word in the above definitions is "produces." Since a facility cannot be a qualifying cogeneration facility unless it is a cogeneration facility and, by definition, a facility cannot be a cogeneration facility before it produces electric energy, whether the facility satisfies the statutory and regulatory requirements for qualifying status before the facility produces electric energy is irrelevant.

*Id.*, at ¶ 61,2778.

Winding Creek counters, without any authority, that "FERC has not held that the facility of a qualifying small power producer must be generating electricity in order to maintain an implementation action under PURPA, nor has any court." While the statutory and regulatory goal behind PURPA may have been to provide price predictability to potential investors, *see JD Wind 1LLC, 130 FERC ¶61,127* (2010), at ¶ 23, it does not follow that such investors necessarily have statutory standing to bring enforcement suits in the face of statutory language that grants enforcement rights only to entities which "produce[] electric energy." 16 U.S.C. §§ 17(A), 824a-3(h)(B).

Winding Creek further avers that it is a "qualifying small power producer," having filed a self-certification form with FERC. The federal regulations provide:

> The qualifying facility status of an existing or a proposed facility that meets the requirements of § 292.203 may be self-certified by the owner or operator of the facility or its representative by properly completing a Form No. 556 and filing that form with the Commission, pursuant to § 131.80 of this chapter, and complying with paragraph (c) of this section.

18 C.F.R. § 292.207(a). Form 556 explicitly states that self-certification does not constitute a determination of qualified facility status by FERC. *See* RJN, Exh. D, p. 3. In the alternative, "an owner or operator of an existing or a proposed facility, or its representative, may file with the

1 Commission an application for Commission certification that the facility is a qualifying facility."
2 § 292.207(b). Winding Creek correctly notes this later process is optional; however, it does not
3 follow that self-certification alone confers statutory standing despite the statutory language
4 defining a qualified facility.

5 Finally, Winding Creek points to FERC's order declining to initiate an enforcement
6 action against the CPUC. *Winding Creek Solar LLC*, 144 FERC ¶ 61122 (Aug. 12, 2013). The
7 pro forma order states, "Our decision not to initiate an enforcement action means that the
8 Petitioners may themselves bring an enforcement action against the California Commission in
9 the appropriate court." *Id.* (citing 16 U.S.C. § 824a-3(h)(2)(B)). While FERC's denial may be
10 without prejudice to Winding Creek's suit in this forum, it does not operate as a finding that
11 Winding Creek is entitled to private enforcement.

12 In sum, taking all of the allegations as true and drawing all inferences in favor of
13 Winding Creek, neither its planned facility in Lodi nor the filing of its self-certification form
14 satisfies the statutory requirement to bring a private enforcement action under the PURPA. In
15 order to proceed on an amended complaint, Winding Creek must offer some other grounds upon
16 which it may plausibly demonstrate statutory standing.

17         2.   *Failure to State a Claim Under PURPA*

18 Even if Winding Creek had both Article III and statutory standing to bring these claims,
19 the CPUC argues, Claim I of the complaint fails to state a plausible claim under PURPA. As the
20 moving party, the CPUC has the burden to demonstrate that the complaint presents no plausible
21 claim as alleged.

22 Claim I alleges that the CPUC's Re-MAT decisions violate PURPA by eliminating the
23 long-run rate option to which QFs are entitled by 18 C.F.R. § 292.304(d)(2)(ii). That section
24 provides power may be purchased from a qualified facility pursuant to a power purchase
25 agreement at a rate based on "[t]he avoided costs calculated at the time the obligation is
26 incurred." *Id.* Winding Creek characterizes this option as a "long-run rate," though it cannot
27 point to any use of this term in the governing federal statutes or regulations. The CPUC argues

28                                                                                              No. C 13-4934 RS
ORDER GRANTING MOTION TO DISMISS

the Re-MAT decisions set rates based on short-run avoided cost, an approach it has used for over 25 years and which has been upheld by the California Courts of Appeal as compliant with PURPA. *See Co. Cal. Edison Co. v. Pub. Util. Comm'n*, 128 Cal. App. 4th 1, 10–11 (2005); *So. Cal. Edison*, 101 Cal. App. 4th 982, 991–93 (2002). Winding Creek does not offer any contrary authority.

Setting aside, for the moment, plaintiff's terminology regarding a "long-run rate," the crux of its complaint is that the CPUC's Re-MAT program does not comply with PURPA and the FERC's regulations implementing PURPA. As alleged in the complaint, the Re-MAT decisions start with the cost to build a renewable solar PV project, which the CPUC deems to "more fully reflect[] avoided costs under federal law" (RJN, Exh. B, at 40), then adjusts the value up or down every two months depending on the market response to the current price. Although the CPUC has "broad ratemaking authority under PURPA," *IEP*, 36 F.3d at 856, Winding Creek makes a plausible claim that these market-based pricing adjustments do not comply with PURPA because they do not reflect the utilities' avoided costs.

While evidently a legal question amenable to judgment on the pleadings without the need for additional factual discovery, the briefing is simply too underdeveloped at this point to decide the issue. The CPUC, therefore, has not met its burden to show the complaint presents no plausible claim for relief.

3. *Failure to State a Claim of Preemption*

Finally, the CPUC contends Claim II of the complaint fails to state a claim for federal preemption. Pursuant to the Supremacy Clause, federal law preempts state law when: "(1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010). There is a presumption against preemption in cases involving the state's traditional police powers absent a "clear and manifest'" congressional intent. *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citations omitted); *Oxygenated Fuels Ass'n v. Davis*, 331

F.3d 665, 668 (9th Cir. 2003). "The regulation of utilities is one of the most important of the functions traditionally associated with the police power of the States." *Ark. Elec. Coop. Co. v. Ark. Pub. Serv. Comm'n*, 461 U.S. 375, 377 (1983).

Both the FPA and PURPA specifically embrace the states' traditional role in energy regulation. As noted above, the FPA declares that the sale of energy in interstate commerce for ultimate distribution to the public is a matter of federal regulation to the extent such matters "are not subject to regulation by the States." 16 U.S.C. § 824(a). Although the FPA vests FERC with the jurisdiction to set the wholesale rate for interstate sales of electricity, 16 U.S.S. § 824(d), PURPA requires FERC to consult with the states in promulgating FERC's regulations, grants a major role to the states in the implementation and enforcement of PURPA, and allows states discretion in setting avoided cost rates. See 16 U.S.C. 824a-3(f)(1), (g) & (h); *FERC v. Mississippi*, 456 U.S. at 746–51. Accordingly, the presumption against preemption applies here.

Winding Creek does not identify any explicit statutory grant of preemption, nor does it identify the theory or theories of preemption on which it relies. To the extent Winding Creek alleges that the CPUC's Re-MAT decisions are preempted by federal law because they do not comply with PURPA, its claim may best be characterized as an allegation of conflict preemption. *See, e.g., Whistler Invs., Inc. v. Depository Trust & Clearing Corp.*, 539 F.3d 1159, 1166 (9th Cir 2008) (conflict preemption occurs when there is an "actual conflict" between federal and state law, or where state law hinders accomplishment and execution of the federal law's purposes and objectives); *IEP*, 36 F.3d at 853. As currently alleged, however, the claim that Re-MAT is preempted by federal law because it exceeds the CPUC's rate setting authority under PURPA (Claim II) appears legally indistinguishable from the claim that the Re-MAT decisions are invalid because they do not comply with PURPA (Claim I). In light of the conclusion noted above that Winding Creek lacks Article III standing, no decision on that question is warranted at this stage of the action.

## V. CONCLUSION

The motion to dismiss is granted with leave to amend for lack of constitutional and statutory standing, and because the complaint as alleged triggers the CPUC's Eleventh Amendment immunity. Any amendment must be filed within 30 days of this order.

IT IS SO ORDERED.

DATED: 2/10/14

_____
RICHARD SEEBORG
United States District Judge

No. C 13-4934 RS
ORDER GRANTING MOTION TO DISMISS

14