THOMAS MELONE (*pro hac vice*)
MICHAEL MELONE (*pro hac vice*)
ALLCO RENEWABLE ENERGY LIMITED
14 Wall St., 20th Floor
New York, NY 10005
Telephone: (212) 681-1120
Facsimile: (801) 858-8818
Thomas.Melone@AllcoUS.com
MJMelone@AllcoUS.com

*Attorneys for Plaintiff*

FUTTERMAN DUPREE DODD CROLEY MAIER LLP
JAMIE L. DUPREE (158105)
JAIME G. TOUCHSTONE (233187)
180 Sansome Street, 17TH Floor
San Francisco, CA 94104
Telephone: (415) 399-3906
Facsimile: (415) 399-3838
jdupree@fddcm.com
jtouchstone@fddcm.com

*Local Attorneys for Plaintiff*

KAREN V. CLOPTON (141900)
HARVEY Y. MORRIS (87902)
ELIZABETH M. MCQUILLAN (106085)
GREGORY HEIDEN (215493)
California Public Utilities Commission
505 Van Ness Avenue
San Francisco, CA 94102
Telephone: (415) 703-1471
Facsimile: (415) 703-2262
emm@cpuc.ca.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINDING CREEK SOLAR LLC,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL PEEVEY, MICHAEL FLORIO, CATHERINE SANDOVAL, CARLA PETERMAN AND MICHAEL PICKER, in their official capacity as Commissioners of the California Public Utilities Commission,<br><br>Defendants. | Case No. C 13-04934 JD<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

Pursuant to Federal Rules of Civil Procedure 26(f), Civil Local Rule 16-9, the Standing Order for All Judges of the Northern District of California, and the Court's Order of April 16, 2014, plaintiff Winding Creek Solar LLC ("Winding Creek") and defendants Michael Peevey, Michel Florio, Catherine Sandoval, Carla Peterman, and Michael Picker, in their official capacities as Commissioners of the California Public Utilities Commission ("CPUC Commissioners"), submit the following Joint Case Management Statement.

1. **JURISDICTION AND SERVICE**.

Winding Creek alleges that this Court has subject matter jurisdiction over this action under Federal question jurisdiction because it is about federal law and rights, specifically the Supremacy Clause of the United States Constitution, the Federal Power Act (16 U.S.C., Ch.12) (the "FPA") and the Public Utility Regulatory Policies Act (16 U.S.C. § 824a-3) ("PURPA").

The CPUC Commissioners assert that the Court lacks subject matter jurisdiction, as set forth in their pending motion to dismiss the First Amendment Complaint ("FAC"), set for May 21, 2014, because: (1) the FAC does not allege constitutional or Article III standing; (2) Winding Creek failed to exhaust its administrative remedies under PURPA; and (3) Congress did not grant the federal district court jurisdiction over claims for preemption by entities that lack statutory standing under PURPA or failed to exhaust administrative remedies.

No issues exist regarding personal jurisdiction or venue. The CPUC Commissioners were served on March 19, 2014. No parties remain to be served.

2. **FACTS**.

<u>Winding Creek's Position</u>.

Climate change is already having sweeping effects on every continent and throughout the world's oceans. Ice caps are melting, sea ice in the Arctic is collapsing, water supplies are coming under stress, heat waves and heavy rains are intensifying, coral reefs are dying, and fish and many other creatures are migrating toward the poles or in some cases going extinct. In much of the American West, mountain snowpack is declining, threatening water supplies for the region. And the snow that does fall is melting earlier in the year, which means there is less melt

1 water to ease the parched summers. In Alaska, the collapse of sea ice is allowing huge waves to
2 strike the coast, causing erosion so rapid that it is already forcing entire communities to relocate.
3       At the same time the cost of producing solar energy has been declining.  The cost of solar
4 energy is now at the point that if the Defendants are required to implement a true long-term
5 avoided cost rate and make that rate widely available for all that apply, the installation of solar
6 facilities would dramatically accelerate.  The determination of a true long-term rate is not
7 difficult.  Utilities across the country use computer models, such as Ventyx's Strategist, to
8 calculate what costs would be saved long-term by the addition of generation facilities.  This case
9 has the potential to have the single-most positive affect on the deployment of solar energy in
10 California, and possibly the United States, if Plaintiff is granted the relief it has requested.
11       *Facts related to Count 1*—PURPA is designed to encourage the development of
12 alternative energy sources, such as from solar energy. The Federal Energy Regulatory
13 Commission ("FERC") is charged with establishing regulations to implement PURPA, and
14 specifically the requirement that electric utilities must purchase power from the owner or
15 operator of qualifying small power production facility ("QSPPF")(such an owner or operator is
16 referred to as qualifying small power producer or "QSPP"). State regulatory authorities such as
17 the California Public Utilities Commission ("CPUC"), in turn, are charged with implementing
18 FERC's regulations. 16 U.S.C. § 824a-3(f).  Pursuant to 18 C.F.R. §292.304(a)(4) the rate for
19 purchases from a new QSPPF must be at the utility's *full* avoided costs "i.e., the cost the utility
20 would have incurred had it generated the electricity itself or purchased the electricity from
21 another source."  18 C.F.R. §292.304(d) provides that the QSPP (not the utility) shall have the
22 option to sell at either a rate based upon the utility's avoided costs calculated at the time of
23 delivery, which is referred to in energy markets as a short-run avoided cost rate ("SRAC"), or a
24 long-run avoided cost ("LRAC") rate based upon the projected avoided costs calculated at the
25 time the obligation is incurred over a specified longer term.
26       The difference between a short-run avoided cost ("SRAC") rate and a long-run avoided
27 cost ("LRAC") rate is significant, both in terms of the price paid and the fact that a fixed long-
28 term rate is necessary for a project to be financed and built.  A SRAC rate is the as-available rate

1  specified by 18 C.F.R. §292.304(d)(2)(i).  The LRAC rate is the long-run rate specified by 18
2  C.F.R. §292.304(d)(2)(ii).  The SRAC rate is determined from time to time at the actual market
3  rate for energy and capacity at the time of delivery.  The SRAC rate varies as the energy markets
4  vary.  The LRAC rate differs from the SRAC rate in a few significant respects.  First, a LRAC
5  rate requires a forecast of future energy prices.  Second, the LRAC requires a forecast for future
6  avoided costs for capacity, and other avoided costs that would be avoided by the utility because
7  the QF facility is committing for a term of 20 years.
8        The Defendants have adopted a rule that prohibits a LRAC rate and only allows the use of
9  a SRAC rate.
10        *Facts related to Count II*—The FPA prohibits a state commission from fixing the price of
11  wholesale energy unless the state commission is acting under its authority under PURPA.  Here,
12  the Defendants fixed the price of wholesale energy when it fixed a wholesale price that utilities
13  must pay under the Re-MAT program under California Public Utilities Code Section 399.20.
14  That act is void under the Supremacy Clause unless the rate is based upon the relevant utilities'
15  avoided costs.  The Plaintiff contends that the rate at which the Defendants' determined the fixed
16  the wholesale price was an improper implementation of PURPA because the price was not
17  determined by the California utilities' avoided costs, and the rate is restricted by various criteria,
18  none of which are permitted under PURPA.
19        CPUC Commissioners' Position.
20        The CPUC Commissioners will not respond here to Winding's Creek's legal arguments
21  above regarding the cost of solar energy or Winding Creek's characterization of PURPA and
22  FERC's regulations, including "LRAC" and "SRAC" rates.  The general background of PURPA
23  is set forth in *Independent Energy Producers v. California Public Utilities Commission,* 36 F.3d
24  848 (9th Cir. 1994).  The CPUC Commissioners assert that there are no factual issues in dispute
25  with respect to the content of the CPUC decisions or FERC's regulations.  The CPUC's
26  decisions implementing PURPA and FERC's regulations, including the Re-MAT program, are
27  subject to judicial notice.  Whether the CPUC decisions comply with federal law is a purely legal
28  issue.  *See* February 10, 2014 Order, p. 12 (whether CPUC decisions comply with federal law is

1  "evidently a legal question amenable to judgment on the pleadings without the need for
2  additional factual discovery"); *Power Res. Group v. Pub. Util. Comm'n of Tex.,* 422 F.3d 231,
3  234-39 (5th Cir. 2005) (Texas rule, "[o]n its face," implements PURPA and its regulations).  In
4  the event the Court does not grant the CPUC Commissioners' pending motion to dismiss the
5  FAC, there may be disputed factual issues regarding whether Winding Creek, as the owner or
6  operator of a qualifying facility or "QF" as defined by PURPA, has or will suffer an actual or
7  imminent injury caused by the CPUC.

8  **3.  LEGAL ISSUES**.

9  <u>Plaintiff's Position.</u>

10  Count 1—The Defendants' rule that prohibits a QSPP from obtaining a LRAC rate for a
11  QSPPF is an improper implementation of PURPA.  On the one hand, the Defendants' argue that
12  nothing in the FERC's regulation's use the term long-run avoided cost rate, yet they claim that
13  the Re-MAT rate under Count 2 is a valid long-term avoided cost rate.

14  Count 2—The Defendants' fixing of the rate under the Re-MAT program is void under
15  the FPA because it was not a proper avoided cost determination under PURPA.

16  Standing—The Plaintiff is a QSPP and has been and is still being injured by the
17  Defendants' violations of the Supremacy Clause, the FPA and PURPA.  The Defendants'
18  standing argument is based upon the erroneous notion that an inanimate object such as QSPPF
19  has been given standing to sue by Congress and injury and standing issues must be determined by
20  reference to that inanimate object.

21  <u>CPUC Commissioners' Position.</u>

22  <u>Subject Matter Jurisdiction</u> – The CPUC Commissioners dispute that this Court has
23  subject matter jurisdiction, as explained in response to No. 1, above, and their motion to dismiss
24  is pending.  The FAC fails to allege any Article III injury to the solar facility on which Winding
25  Creek bases its statutory standing under Section 210(h)(2)(B) of PURPA, 16 U.S.C. § 824a-
26  3(h)(2)(B); that facility has a 20-year contract with PG&E that the FAC does not challenge.  *See*
27  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-62, 574 (1991) (party challenging government
28  action must show immediate danger of concrete injury); *City of Sausalito v. O'Neill,* 386 F.3d

1186, 1199 (9th Cir. 2004) (plaintiff must satisfy both statutory and constitutional standing); *Bova v. City of Medford,* 564 F.3d 1093, 1096-97 (9th Cir. 2009) (no standing if injury conjectural or contingent on future events). The Court also lacks subject matter jurisdiction because no owner or operator of a QF petitioned FERC for enforcement as required by Section 210(h)(2)(B) of PURPA. Winding Creek petitioned FERC for enforcement as the owner of a solar facility in Lodi, California. However, that facility is unbuilt and is not a QF because it is not producing energy. *See* February 10, 2014 Order, pp. 10-11; *Niagara Mohawk Power Corp. v. FERC*, 306 F.3d 1264, 1270 (2d Cir. 2002); *see also H.R. Rep. No. 95-1750, reprinted in* 1978 U.S.C.C.A.N. 7797, 1978 WL 8505, at *7817-18 (Oct.10, 1978) (Congress expressly intended to limit the jurisdiction of the federal district courts). Finally, the Court lacks subject matter jurisdiction over a preemption claim by a party that lacks statutory standing or failed to comply with the administrative exhaustion requirements under Section 210(h)(2)(B) of PURPA. *See Block v. Cmty Nutrition Inst.,* 467 U.S. 340, 344-48 (1984) (no subject matter jurisdiction because allowing challenge to administrative action by parties not defined by the statute would disrupt the statute's complex administrative scheme, and allow parties "a convenient device" to evade statutory requirements); *United Dairymen of Ariz. v. Veneman,* 279 F.3d 1160, 1163-66 (9th Cir. 2002) (same).

Enforcement of PURPA and Preemption – The CPUC Commissioners assert that the Re-MAT decisions comply with federal law. Nothing in FERC's regulations mandate a "long-run" or "LRAC" rate as Winding Creek uses these terms. *See* 18 C.F.R. § 292.304(d). State commissions like the CPUC have broad discretion in implementing PURPA and FERC's regulations, and FERC's regulations do not mandate any specific criteria for avoided cost rates. *See* 18 C.F.R. § 292.304(e); *Indep. Energy Producers,* 36 F.3d at 856 (CPUC has "broad ratemaking authority under PURPA"); *Cal. Pub. Util. Comm'n*, 133 FERC ¶ 61,059, at P 24 (2010), *reh'g denied*, 134 FERC ¶ 61,044 (2011) (*"CPUC v. FERC"*). Avoided cost rates may be based on market rates. *See Revised Regulations Governing Small Power Production and Cogeneration Facilities,* 114 FERC ¶ 61,102, at PP 96-99 (2006); *N. Little Rock Cogeneration v. Entergy Servs.*, 72 FERC ¶ 61,263, at pp. 62,173-74 (1995). Finally, FERC declined to initiate

1  any enforcement action in response to Winding Creek's petition for enforcement, and also a
2  similar challenge to Vermont's voluntary feed-in-tariff program by another facility affiliated with
3  Winding Creek's counsel Thomas Melone.  *See Winding Creek Solar, LLC,* 144 FERC ¶ 61,122
4  (2013); *Otter Creek Solar LLC,* 143 FERC ¶ 61,282 (2013), *reconsideration denied,* 146 FERC ¶
5  61,192 (2014).

### 4. MOTIONS.

The original defendant—the CPUC—filed a motion to dismiss the Complaint, which was granted with leave to amend by an Order dated February 10, 2014.  Winding Creek filed the FAC on March 11, 2014.  The CPUC Commissioners filed a motion to dismiss the FAC on April 2, 2014, which motion is still pending and set for a hearing on May 21, 2014.  The CPUC Commissioners submit that, if the action is not dismissed for lack of subject matter jurisdiction, whether the CPUC decisions comply with federal law should be resolved by motion for judgment on the pleadings, and, if standing also is in issue, by summary adjudication of that issue. Winding Creek does not agree that the issue of avoided costs is amenable to adjudication without factual discovery related to the avoided costs of the California utilities.

### 5. AMENDMENT OF PLEADINGS.

On March 11, 2014, Winding Creek filed the FAC.  Winding Creek does not intend to further amend its pleadings at this time.

### 6. EVIDENCE PRESERVATION.

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines").  The parties have not met and conferred pursuant to Federal Rules of Civil Procedure, Rule 26(f) and ESI Guideline 2.02 regarding the preservation of evidence relevant to the issues in this case because the Court previously vacated the Case Management Conference and associated deadlines in its Order of January 28, 2014, given the CPUC's pending motion to dismiss the Complaint based on the Eleventh Amendment, the Johnson Act, 28 U.S.C. § 1342, and lack of subject matter jurisdiction.

/ / /

/ / /

**7. DISCLOSURES.**

The parties have not yet exchanged Initial Disclosures in compliance with Federal Rules of Civil Procedure, Rule 26(f), given the Court's January 28, 2014 Order.

**8. DISCOVERY.**

As a consequence of the Court's January 28, 2014 Order, there is no agreement with respect to any elements of a discovery plan. To date, there has been no discovery propounded. In the event the action is not dismissed, it is the CPUC Commissioners' position that no discovery is necessary on the issue of whether the CPUC decisions comply with PURPA and FERC's regulations. *See* response to Nos. 2-3, above; *CPUC v. FERC,* 133 FERC ¶ 61,059, at P 24 (FERC does not second guess State commission's determinations, which are fact-specific, but reviews whether rules are consistent with PURPA); *cf. Qwest Corp v. Ariz. Corp. Comm'n*, 496 F. Supp. 2d 1069, 1073-75 (D. Ariz. 2007) ("court does not sit as a surrogate public utilities commission to second-guess the decisions made by the state agency to which Congress has committed primary responsibility for implementing the Act in Arizona"). In the event the action is not dismissed, it is Winding Creek's position that factual discovery is necessary with respect to the avoided costs of the California utilities.

**9. CLASS ACTIONS.**

Not applicable.

**10. RELATED CASES.**

There are no related cases.

**11. RELIEF.**

Plaintiff's Statement.

Winding Creek asks this Court to (a) declare that the rule prohibiting a QSSP the right to choose an avoided cost long-run rate pursuant to 18 C.F.R. §292.304(d)(2)(ii) violates PURPA, and order the CPUC Commissioners to implement a rule providing a QSSP has the right to choose an avoided cost long-run rate pursuant to 18 C.F.R. §292.304(d)(2)(ii) for a QSPPF; (b) enjoin the Defendants from issuing further orders and decisions that are inconsistent with the FPA and PURPA; (c) declare that the Re-MAT program instituted in the Re-MAT decisions is

preempted by the FPA and therefore void under the FPA and the Supremacy Clause of the United States Constitution and without legal force and effect and that any PPAs executed under the Re-MAT program are void (or alternatively, adjust the rate paid under those contracts upwards to properly reflect long-term avoided costs); (d) the Re-MAT decisions' legal conclusion that a price that sets an avoided cost price based upon the adjusting mechanism designed by Defendants is inconsistent with PURPA and the FERC's regulations implementing PURPA; and (e) declare that (i) the initial price set under the Re-MAT program violates the FPA and is inconsistent with PURPA and the FERC's regulations implementing PURPA; (ii) the Re-MAT price adjusting mechanism is inconsistent with PURPA and the FERC's regulations implementing PURPA; (iii) a determination of avoided costs, whether through a market mechanism or by an administrative determination, must reflect the highest marginal costs avoided by the interconnection utility; (iv) the Re-MAT Decisions' failure to exclude RECs from the assets transferred to the investor owned utility results in the QSPP receiving less than avoided costs for energy and/or capacity for the QSPPF, which is inconsistent with PURPA and the FERC's regulations implementing PURPA; (iv) limiting the availability of the avoided cost price to certain renewable QSSPFs, (whether as the result of the QSPPF's network upgrades, the different time of day energy buckets, or the bi-monthly allocation cap) as opposed to making it available to all renewable QSSPs that apply is inconsistent with PURPA and the FERC's regulations implementing PURPA, and (v) if the Re-MAT is not wholly preempted, to cause the CPUC Commissioners to order the execution of PPAs with Re-MAT applicants, one of which is the Plaintiff, under the Re-MAT at a rate that properly reflects long-term avoided costs, and is not limited by the bi-monthly caps or other improper limitations.

CPUC Commissioners' Position.

Given the bar of the Eleventh Amendment, only prospective injunctive and declaratory relief is permissible against the Commissioners in their official capacities. *See* February 10, 2014 Order, p. 8. The Court may not order any retroactive relief, such as voiding contracts. Further, it is not the function of the Court to engage in ratemaking, which is a legislative function. *See United States v. Morgan,* 313 U.S. 409, 417 (1941). Congress created an elaborate

1  enforcement scheme for PURPA, and limited the jurisdiction of the federal district courts in 16
2  U.S.C. § 824a-3(g)-(h).  PURPA requires that any challenge by Winding Creek seeking review of
3  the CPUC's determination of avoided cost rate, which must be based on review of the
4  administrative record, be brought in state court.  *See* 16 U.S.C. § 824a-3(g)(1).

**12. SETTLEMENT AND ADR**.

There have been no ADR efforts to date.

<u>CPUC Commissioners' Position</u>.

ADR and settlement are not possible because whether the CPUC complied with federal law is a purely legal issue, and the CPUC rules for implementation of PURPA are rules of general application, determined in administrative proceedings before the CPUC, with notice and the opportunity to be heard for all interested parties.

**13. CONSENT TO A MAGISTRATE**.

Winding Creek has declined to consent to proceed before a Magistrate Judge for all purposes.

**14. OTHER PREFERENCES**.

The parties do not believe that this case is suitable for reference to binding arbitration, special master, or the Judicial Panel on Multidistrict Litigation.

**15. NARROWING OF ISSUES**.

It is premature for the parties to determine which material facts or legal issues in this case will be resolved by stipulation, if any.

**16. EXPEDITED SCHEDULE**.

The parties do not believe that this case is appropriate to be handled under the Expedited Trial Procedure of General Order 64.

**17. SCHEDULING.**

In light of the CPUC Commissioners' pending motion to dismiss, the parties agree that it is premature at this time for the parties to discuss scheduling issues, including scheduling issues related to discovery in this action.

/ / /

**18. TRIAL.**

This case will be tried by a judge. It is premature to estimate the length of trial as the scope of issues to be presented at trial could be affected by law and motion practice.

**19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS.**

On October 24, 2013, the Plaintiff filed its "Certification of Interested Entities or Persons" as required by Civil L. R. 3-16. Pursuant to Civil L.R. 3-16, the Plaintiff certified that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: (1) Allco Finance Limited, a Nevada corporation ("AFL"), which owns 100% of Plaintiff, and (2) Thomas Melone, who owns 100% of AFL.

**20. OTHER MATTERS.**

The parties are not presently aware of any other matters that may facilitate the just, speedy, and inexpensive disposition of this matter.

Dated: May 1, 2014                                Respectfully submitted,

                                                   /s/ Thomas Melone
                                                  Thomas Melone (*pro hac vice*)
                                                  *Attorneys for Plaintiff*

                                                  FUTTERMAN DUPREE DODD
                                                  CROLEY MAIER LLP

                                                  By: /s/Jaime G. Touchstone
                                                      Jaime G. Touchstone
                                                      *Local Attorneys for Plaintiff*

                                                  By: /s/ Elizabeth M. McQuillan
                                                  Elizabeth M. McQuillan
                                                  California Public Utilities Commission
                                                  *Attorneys for Defendants*

I hereby attest that I have on file all holograph signatures for any signatures by Plaintiff's attorneys indicated by a "conformed" signature (/s/) within this efiled document.

                                                  /s/Jaime G. Touchstone
                                                  Jaime G. Touchstone