UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINDING CREEK SOLAR LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL PEEVEY, et al.,<br><br>　　　　Defendants. | Case No. 13-cv-04934-JD<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 45 |

## INTRODUCTION

Plaintiff Winding Creek LLC ("Winding Creek") is a developer of solar projects. It seeks a declaration that certain ratemaking actions and decisions by the California Public Utilities Commission ("CPUC") went beyond what is permitted by federal law. The Court previously dismissed Winding Creek's initial complaint with leave to amend. Currently before the Court is the defendants CPUC Commissioners' motion to dismiss Winding Creek's first amended complaint. The Court grants the motion and dismisses the complaint, again with leave to amend.

## BACKGROUND

### I.   STATUTORY FRAMEWORK

The statutory context of this action is complex. As a preliminary matter, under the Federal Power Act ("FPA"), 16 U.S.C. § 791a *et seq.*, the interstate commerce of electric energy at wholesale is subject to regulation by the Federal Energy Regulatory Commission ("FERC").

In 1978, Congress enacted the Public Utility Regulatory Policies Act ("PURPA"), which amended the FPA. PURPA was enacted to encourage the development of renewable sources of energy, and "thus to reduce American dependence on fossil fuels by promoting increased energy efficiency." *Indep. Energy Producers Ass'n, Inc. v. Cal. Pub. Util. Comm'n*, 36 F.3d 848, 850 (9th Cir. 1994).

To that end, PURPA directs FERC to prescribe "such rules as it determines necessary to encourage cogeneration and small power production," including rules that "require electric utilities to offer to . . . purchase electric energy from [qualifying cogeneration facilities and qualifying small power production facilities]." 16 U.S.C. § 824a-3(a). PURPA further requires State regulatory authorities such as CPUC to implement the rules prescribed by FERC. *Id*. at § 824a-3(f)(1).

PURPA provides qualifying facilities with the right to file suit in the United States district courts if State agencies like the CPUC fail to properly implement FERC's rules. *Id*. at § 824a-3(h)(2)(B). But this right to file suit arises only after the "electric utility, qualifying cogenerator or qualifying small power producer" has first "petition[ed] the Commission [*i.e.*, FERC] to enforce the requirements of subsection (f)" and FERC has not initiated an enforcement action itself within 60 days of the petition. *Id*.

The crux of Winding Creek's claim in this case is that the rate-setting program established by the CPUC violates PURPA itself and FERC's PURPA regulations.

## II. THE ORIGINAL COMPLANT AND PRIOR MOTION TO DISMISS ORDER

Winding Creek filed this action in this Court on October 24, 2013. The original complaint alleged two claims against defendant CPUC. Both claims related to a 1.0 megawatt solar project that Winding Creek had on the drawing board to build in Lodi, California ("1.0MW facility" or "Lodi facility"). Dkt. No. 1. Winding Creek took issue with a series of CPUC decisions that it calls the "Re-MAT Decisions," which "create[d] an adjusting auction rate mechanism" to determine the rate at which utilities must purchase electricity from qualifying cogeneration or small power production facilities under PURPA. *Id*. at ¶ 44. Winding Creek's main complaint was that CPUC had eliminated its "entitlement" under the law to a "long-run rate," *i.e.*, a rate "which equals the project's avoided costs calculated at the time the obligation is incurred over a specified longer term," as opposed to "a rate based upon the utility's avoided costs calculated at the time of delivery." *Id*. at ¶¶ 57-58. Winding Creek alleged that CPUC's policy violated PURPA and FERC's regulations, and that the Re-MAT program is preempted by the FPA because it is an improper implementation of PURPA. *See id*. at ¶¶ 49-118.

1    CPUC moved to dismiss the complaint, and on February 10, 2014, the Court granted
2    CPUC's motion, dismissing the complaint with leave to amend.  Dkt. Nos. 27, 39.  The Court held
3    that "the complaint as alleged triggers the CPUC's Eleventh Amendment immunity."  Dkt. No. 39
4    at 14.  The Court also held that Winding Creek had failed to establish either constitutional or
5    statutory standing.  With respect to constitutional standing, the Court held that Plaintiff had not
6    satisfied its burden to show actual or imminent injury under Article III because it had not, for
7    example, made any averments that it could not secure financing for its planned Lodi facility due to
8    CPUC's alleged violations of PURPA.  *See id*. at 6.  With respect to statutory standing, the Court
9    held that enforcement rights under PURPA attach only to "entities which 'produce[] electric
10   energy.'"  *Id*. at 10 (citing 16 U.S.C. § 17(A), 824a-3(h)(B)).  Because the Lodi facility was not
11   yet producing electricity, the Court reasoned that it was not a "qualifying small power producer"
12   under the relevant statutory scheme, and Winding Creek therefore lacked statutory standing under
13   PURPA to pursue this action.  *See id*. at 9-11.  Although the Court expressed concern that certain
14   complaint averments "suggest amendment may not be available to rectify the standing defect,"
15   given the early stage of the case, the Court granted Winding Creek leave to amend.  *Id*. at 7, 14.

### III.  THE FIRST AMENDED COMPLAINT AND DEFENDANTS' MOTION TO DISMISS

On March 11, 2014, Winding Creek filed a first amended complaint ("FAC").
Dkt. No. 41.  The FAC and the original complaint differ in two key ways.  First, Winding Creek
now names as defendants five CPUC commissioners in their official capacity ("CPUC
Commissioners" or "Defendants"), and CPUC itself is no longer a defendant in this action.
Second, the FAC brings into the action two new solar facilities.  In addition to the 1.0MW Lodi
facility, Winding Creek asserts that it is "also the owner and developer of a 3.0MW project in
Templeton, California" ("3.0MW facility" or "Templeton facility"), and that it is "also the
operator of an existing and fully constructed 1.5MW solar generating facility . . . in Lodi,
California" ("1.5MW facility," "new Lodi facility" or "Bear Creek facility").[1]  *Id.* at ¶ 28.

---

[1] Plaintiff's pleadings use different names for the same facilities.  In the event Plaintiff chooses to amend, it is advised to pick one name per facility and stick with that.

Winding Creek states that the 1.5MW facility "is in commercial operation and delivering and selling electricity and capacity to Pacific Gas and Electric Company ('PG&E') under a 20-year power purchase agreement." *Id*. The FAC alleges that the "1.5MW solar electric generating facility" -- but not any other facility -- "constitutes a 'small power production facility' within the meaning of Section 210(l) of PURPA." *Id*. (citing Section 3(17) of the FPA, 16 U.S.C. 796(17)).

The CPUC Commissioners have moved to dismiss the FAC. Dkt. No. 45. In their motion, Defendants assert that statutory standing and constitutional standing are both still lacking and ask that the FAC be dismissed without leave to amend. Winding Creek engaged new counsel after the motion to dismiss briefing had closed, and requested permission to file a supplemental opposition brief so that it could "revisit" the Court's prior reasoning that the initial Lodi facility "could not be a 'qualifying small power producer' until it was actually producing electricity." Dkt. No. 52 at 2-3. The Court granted the requested leave to file, and also permitted Defendants to file a supplemental memorandum in reply. *See* Dkt. Nos. 56, 58. On May 21, 2014, the Court held a hearing on Defendants' motion to dismiss.

## DISCUSSION

### I.   GOVERNING STANDARD

Defendants have moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000)). At the motion to dismiss stage, plaintiff "need only show that the facts alleged, if proved, would confer standing upon him." *Id*. at 1140 (citing *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 104 (1998)).

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81

1  (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The existence of
2  federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed.*"
3  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 (1992) (citing *Newman-Green, Inc. v. Alfonzo-*
4  *Larrain,* 490 U.S. 826, 830 (1989)) (emphasis in *Lujan*).

## II.   DISMISSAL UNDER FRCP 8

As a preliminary matter, the Court finds it appropriate to dismiss the FAC sua sponte with leave to amend pursuant to Federal Rule of Civil Procedure 8(a)(2). That rule requires "a short and plain statement of the claim showing that the pleader is entitled to relief," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The FAC violates this rule in a number of respects, due mainly to Winding Creek's flip-flopping on key allegations and inclusion of confusing and wholly irrelevant factual averments. The most striking example of the FAC's flaws involves the important question of statutory standing. Of the three facilities referenced in the FAC, it is only the new Lodi facility that is alleged in the FAC to be a "small power production facility" with statutory standing to sue under PURPA. *See*, *e.g.*, Dkt. No. 41 at ¶ 28. In its opposition brief, Winding Creek conceded that the original Lodi facility did not have PURPA standing. It argued that it had "cured th[is] jurisdictional defect" by amending the complaint and adding the allegation that it is now the operator of "a qualifying small power production facility," by which Winding Creek was referring only to the "Bear Creek Solar facility." Dkt. No. 46 at 3, 5, 6.

But in a supplemental opposition brief and at the hearing (both of which happened after the addition of new counsel), Winding Creek changed positions to argue that there never was any jurisdictional defect, because the original Lodi facility did, in fact, have PURPA standing despite its non-operational status. Dkt. No. 56. These new arguments are at odds with what the FAC actually pleads, and the Court finds that the FAC no longer gives Defendants "fair notice" of what Winding Creek's claims are. This defect alone mandates dismissal of Winding Creek's amended complaint.

1	Other problems in the FAC compound its deficiency under Rule 8. For example, at the hearing, Winding Creek's counsel acknowledged that the 3.0MW facility in Templeton, California has no role in this litigation and may be disregarded. Counsel further acknowledged that Count II of the FAC, which alleges that the "Re-MAT is preempted by the Federal Power Act and is an improper implementation of PURPA," is analytically identical to Count I, which alleges that the Re-MAT program "violates PURPA." *See* Dkt. No. 41. That the two claims are "legally indistinguishable" from one another was previously noted in this Court's prior motion to dismiss order. Dkt. No. 39 at 13. These admittedly extraneous allegations in the FAC further violate the "short and plain" and "fair notice" mandates of Rule 8, and they are to be removed in any subsequent pleadings.

## III.  DISMISSAL UNDER FRCP 12(B)(1)

The Court also dismisses the FAC under FRCP 12(b)(1) because the FAC fails to establish the Court's jurisdiction over the case. Defendants submitted with their motion to dismiss a request for judicial notice, attaching three documents which were filed with the FERC. Dkt. No. 45-1. The Court grants the request and takes judicial notice of these documents under Federal Rule of Evidence 201. "Judicial notice is appropriate for records and 'reports of administrative bodies.'" *U.S. v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (citation omitted).

The first two documents are two versions of "Form 556," which is a document that small power production or cogeneration facilities may file with the FERC to "self-certify" as a "qualifying small power production facility" or a "qualifying cogeneration facility." The two versions of the form were filed on behalf of the new Lodi facility on March 21, 2013 and February 17, 2014, respectively. Dkt. No. 45-1, Exs. A & B. As Defendants point out, these documents show that Bear Creek Solar LLC was previously the operator of the new Lodi facility, and it was not until February 17, 2014 -- seven days after this Court's first motion to dismiss order -- that Winding Creek notified FERC that it was now the operator of the new Lodi facility. The third document is a Petition for Enforcement under the Public Utilities Regulatory Policies Act of 1978, filed by Winding Creek Solar LLC on June 13, 2013. *Id.*, Ex. C. The Petition mentions only "a

6

1.0 megawatt solar project in Lodi, California," and asserts that the facility "has been self-certified." *Id*. at 4-5.

The addition of the new Lodi facility -- and the fact that Winding Creek is now registered with the FERC as its operator -- does not give Winding Creek statutory standing under PURPA or constitutional standing under Article III.  Under PURPA, a "qualifying small power producer" has the right to initiate an action in U.S. district court only if it has first petitioned FERC to enforce its rules and FERC has not done so within 60 days.  16 U.S.C. § 824a-3(h)(2)(B).  Here, it is not disputed that Winding Creek has filed only one petition with the FERC, namely the petition filed on June 13, 2013, eight months before Winding Creek became the operator of the new Lodi facility.  Understandably, the petition makes no mention of the new Lodi facility, and instead mentions only the original Lodi facility.  Dkt. No. 45-1, Ex. C.  The fact that Winding Creek is now the operator of the new Lodi facility does not give it standing under PURPA when Winding Creek has never filed with the FERC any petition as the operator of the new Lodi facility.

In the FAC and in its opposition, Winding Creek does not attempt to argue that it was a "qualifying power producer" at the time it filed its only FERC petition.  Rather, Winding Creek claims that it has met "the essential jurisdictional elements," which are "(1) that Winding Creek is a QSPP at the time of filing the FAC, which it is, and (2) that Winding Creek first presented the issues for the enforcement action to the FERC, which it did."  Dkt. No. 46 at 7.  But these are not mix-and-match pre-conditions that can be met at different times.  Rather, the statute states that "[a]ny . . . qualifying small power producer may petition the Commission . . . ," 16 U.S.C. § 824a-3(h)(2)(B), and so Winding Creek must have been a "qualifying small power producer" at the time it petitioned FERC.  Although Winding Creek shifted its position on this issue at the hearing, the FAC and Winding Creek's opposition to the motion to dismiss base the contention that Winding Creek was a "qualifying small power producer" on the fact that it is now the operator of the new Lodi facility, a status that it did not acquire until after the prior motion to dismiss order. For example, in its opposition, Winding Creek explained that "'qualifying small power producer' means the owner or operator of a qualifying small power production facility," and argued that "Winding Creek is the operator of a qualifying small power production facility ('QSPPF'),"

7

making reference to the Bear Creek facility only.  Dkt. No. 3 and n.2.  As alleged by the FAC, then, Winding Creek did not petition the Commission as a "qualifying small power producer," it lacks statutory standing under PURPA on that basis, and the FAC is dismissed on that ground.

Winding Creek's acquired status as operator of the new Lodi facility also does not bestow upon it a constitutionally cognizable injury under Article III.  The FAC itself alleges that the 1.5MW project is "delivering and selling electricity and capacity to [PG&E] under a 20-year power purchase agreement."  Dkt. No. 41 at ¶ 28.  Moreover, at the motion to dismiss hearing, Winding Creek acknowledged that the new Lodi facility is "happy with" its power purchase agreement, and that no claims were being made -- and no relief was being sought -- on behalf of that facility.  Winding Creek's effort to base Article III injury arguments on the unbuilt 1.0MW and 3.0MW facilities, while resting its PURPA statutory standing arguments solely on the 1.5MW facility, is misguided and hints at an opportunistic approach to pleading that is wholly improper.

For all of these reasons, the FAC as currently pled fails to cure the statutory and constitutional standing deficiencies identified in this Court's prior motion to dismiss order, and it is therefore dismissed.

## IV. LEAVE TO AMEND

Defendants urge the Court to dismiss the FAC without leave to amend.  Dkt. Nos. 45, 48.  But this Court is to "freely give leave when justice so requires."  FRCP 15(a)(2).  Especially in light of the Court's sua sponte dismissal under FRCP 8, the Court finds that dismissal with prejudice is not appropriate at this juncture.  But as Winding Creek's next attempt will be its third, the Court offers this guidance.

The Court is concerned that the original Lodi facility -- which Winding Creek claimed at the hearing was the only facility for which it seeks relief -- may be unable to provide the constitutional standing necessary for Winding Creek to proceed.  Specifically, the Court questions whether the facility's inability to get the specific contract terms it desires is a cognizable injury under Article III.  That might in the end be the case, but the Court will examine that issue closely should there be a further complaint and motion to dismiss.

1    In addition, as discussed at the hearing, the Court also questions whether a small power production facility that is not yet producing any electric energy can be deemed a "qualifying small power production facility" under PURPA.  As Winding Creek acknowledged at the oral argument, the relevant statutory definitional framework resembles nested eggs.  A "qualifying small power producer" (which can have standing to sue under certain circumstances) is an owner or operator of a "qualifying small power production facility," and a "small power production facility" is a "facility which . . . *produces electric energy* . . . ."  16 U.S.C. § 796 (emphasis added).  Although Winding Creek argues that FERC has, through its regulations, expanded this definition to include "proposed" facilities, such an expansion would appear to exceed the scope of the agency's authority.  *See*, *e.g.*, *Banko v. Apple Inc.*, No. CV-13-02977-RS, 2013 WL 7394596 (N.D. Cal. Sept. 27, 2013) (conducting a similar analysis in a different context, and concluding that the statute and not the agency's regulation must control where the statute is not ambiguous).  The Court will also closely analyze this issue should it arise again in Winding Creek's second amended complaint.

## CONCLUSION

For all of the reasons above, the motion to dismiss is granted with leave to amend.  Any amendment must be filed within 14 days of this order.

**IT IS SO ORDERED.**

Dated:  June 11, 2014

_____
JAMES DONATO
United States District Judge