JENNER & BLOCK LLP
MATTHEW PRICE (*pro hac vice*)
1099 New York Avenue NW Suite 900
Washington, DC 20001
Telephone: (202) 639-6873
Facsimile: (202) 661-4802
mprice@jenner.com

THOMAS MELONE (*pro hac vice*)
MICHAEL MELONE (*pro hac vice*)
ALLCO RENEWABLE ENERGY LIMITED
14 Wall St., 20th Floor
New York, NY 10005
Telephone: (212) 681-1120
Facsimile: (801) 858-8818
Thomas.Melone@AllcoUS.com
MJMelone@AllcoUS.com

*Attorneys for Plaintiff*

FUTTERMAN DUPREE DODD CROLEY MAIER LLP
JAMIE L. DUPREE (158105)
JAIME G. TOUCHSTONE (233187)
180 Sansome Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 399-3906
Facsimile: (415) 399-3838
jdupree@fddcm.com
jtouchstone@fddcm.com

*Local Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| WINDING CREEK SOLAR LLC, | Case No. 3:13-04934-JD |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM REGARDING APPLICATION OF SUPPLEMENTAL AUTHORITY** |
| MICHAEL PEEVEY, MICHAEL FLORIO, CATHERINE SANDOVAL, CARLA PETERMAN, and MICHAEL PICKER, in their official capacity as Commissioners of the California Public Utilities Commission, | **Honorable James Donato** |
| Defendants. | **Leave to File Granted on December 12, 2014** |

On December 12, 2014, this Court directed the parties to file briefs addressing the application, if any, of *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380 (5th Cir. 2014), to Defendants' pending motion to dismiss. *Exelon Wind* does not directly decide any issue relevant to the pending motion, but the differences between that case and the case at bar illuminate and underscore the weaknesses in Defendants' arguments.

### A. A Brief Summary of the *Exelon Wind* Decision.

Under a rule enacted by the Texas Public Utility Commission ("Texas PUC") pursuant to the Public Utility Regulatory Policies Act ("PURPA"), a Qualifying Facility ("QF") may form a Legally Enforceable Obligation with a utility – and thereby require the utility to enter into a contract purchasing its power – only if the QF generates "firm power." *Exelon Wind*, 766 F.3d at 385. "Firm power" is power that can be scheduled in advance and delivered at the scheduled time. *Id.*

Exelon owns and operates QFs that generate wind power. It claimed to have successfully formed a Legally Enforceable Obligation with a utility, Southwestern Public Service Company, and sought an order from the Texas PUC to that effect. *Id.* at 386-87. The Texas PUC rejected that Exelon's claim, instead finding that Exelon was unable to produce "firm power" and thus, under the Texas PUC's rule, could not form a Legally Enforceable Obligation.

Exelon sued in federal district court, raising two sets of claims. The first set of claims focused on the Texas PUC's order denying Exelon's claim. Exelon argued that the Texas PUC had erred in applying its "firm power" rule to deny Exelon the ability to form a Legally Enforceable Obligation. *Id.* at 390-91. The Fifth Circuit ruled that this was an "as-applied" challenge, over which the federal court lacked jurisdiction. *Id.* at 391, 393.

The second set of claims focused on the Texas PUC's "firm power" rule itself. Exelon argued that the "firm power" rule did not implement the regulations of the Federal Energy Regulatory Commission ("FERC") because it limited the category of QFs that may form a Legally Enforceable Obligation. According to Exelon, under FERC's regulations, *all* QFs may form Legally Enforceable Obligations. *Id.* at 392-93.

The Fifth Circuit held that this second set of claims amounted to an "implementation"

challenge to the Texas "firm power" rule over which federal courts *do* have subject matter jurisdiction. *Id.* at 393. However, the Fifth Circuit went on to reject Exelon's claims on the merits. It stated that there was no FERC regulation specifically addressing whether non-firm energy producers were entitled to form Legally Enforceable Obligations, *id.* at 395, and it drew on a prior decision, *Power Resource Group, Inc. v. Public Utility Commission of Texas*, 422 F.3d 231 (5th Cir. 2005), which held that states enjoy discretion to set specific parameters governing when QFs may form Legally Enforceable Obligations. *Exelon Wind*, 766 F.3d at 395-96. In *Power Resource Group*, the Fifth Circuit upheld a Texas PUC rule that allowed a QF to form a Legally Enforceable Obligation only if the QF could commit to coming online and delivering power within 90 days. 422 F.3d at 234. The Fifth Circuit held that, like the "90-day" rule in that case, the "firm power" rule in *Exelon Wind* fell within the Texas PUC's "discretion to determine the specific parameters for when a [QF] can form a Legally Enforceable Obligation." *Exelon Wind*, 766 F.3d at 396. In reaching that holding, the Fifth Circuit refused to defer to an informal opinion letter issued by FERC that took the opposite position. *Id.* at 397-99.

### B. *Exelon Wind* Does Not Bear Directly on Any Issue Related to the Pending Motion, But Does Illuminate the Weaknesses in Defendants' Arguments.

The issues decided in *Exelon Wind* have no bearing on this case. First, there is no question that this case is an "implementation" case over which this Court has jurisdiction. The California Public Utility Commission ("CPUC") Orders that Plaintiff challenges in its Second Amended Complaint are general orders establishing the Re-MAT program, and are not specific to Plaintiff.[1]

Second, the merits issue decided by the Fifth Circuit is simply not relevant here. Unlike the Texas PUC, the CPUC makes no distinction between those QFs capable of delivering "firm power" and those whose power cannot be scheduled in advance. Both are eligible to participate in the CPUC's Re-MAT program and, through that program, to form a Legally Enforceable Obligation with a utility. Thus, the Re-MAT program requires utilities to enter into long-term,

---

[1] Moreover, Defendants have conceded that this case involves an implementation challenge. *See* 5/21/14 Tr. (ECF No. 68) at 40 ("[T]he Plaintiff is attacking the lawfulness of our rules… And on that basis, we interpret this as an implementation claim.").

fixed-price contracts to purchase the output of QFs regardless of whether those QFs are "baseload" (meaning that they generate firm power), "peaking, as-available" (meaning that they generate intermittent power, typically at peak times, like solar facilities), or "non-peaking, as-available" (meaning that they generate intermittent power, typically at non-peak times, like wind facilities). *See, e.g.*, Second Am. Compl. ¶¶ 47-49, 51.

Third, *Exelon Wind* also has nothing to say about the merits questions that *are* at issue in this case – namely, whether the California Re-MAT scheme violates PURPA because (1) it caps the quantity of power that utilities are required to purchase from QFs, *see* Second Am. Compl. ¶¶ 50-54, 85, and (2) violates FERC's express requirement that QFs be compensated at a rate equal to the utility's "avoided costs." *Id.* ¶¶ 55-65, 86-96; 18 C.F.R. § 292.304(d); *Indep. Energy Producers Ass'n v. CPUC*, 36 F.3d 848, 857 (9th Cir. 1994). As Plaintiff has explained, the Re-MAT scheme sets a price that is based upon pitting QFs against each other in a bimonthly reverse auction. Federal law, however, requires that QFs receive a price equal to the utility's avoided costs – that is, the costs that the utility avoids by purchasing from QFs *instead of from a non-PURPA source*. *See* Pl. Opp. to Mot. to Dismiss (ECF No. 66) at 11-14.

The Fifth Circuit's discussion of 18 C.F.R. § 292.304(d) – and how that provision can be read consistent with the "firm power" rule, *see Exelon Wind*, 766 F.3d at 399 – has no bearing here, because, as noted above, the CPUC has chosen *not* to distinguish between firm and non-firm power, but instead has allowed *both* to form Legally Enforceable Obligations and to enter a fixed-price, long-term contract with utilities for the Qualifying Facilities' output.

In any event, however, the Fifth Circuit misunderstood that regulation. The plain language of Subsection (d) allows all QFs (whether firm or non-firm) the option to choose whether to form a Legally Enforceable Obligation, and thereby enter a contract, with a utility, or instead whether to sell without a contract. Under § 292.304(d)(1), the QF does not enter any contract, and therefore retains the flexibility to choose to sell its power to other buyers, including other utilities with which the QF is interconnected. *See id.* § 292.303(d). And a utility may terminate any obligation to purchase under § 292.304(d)(1) by filing a petition with FERC. *Id.* § 292.310. By contrast, under § 292.304(d)(2), the QF sells its output to a particular utility

pursuant to contract, and the utility is contractually obligated to purchase that output. Under § 292.304(d)(2), the QF can choose whether the rate of that contract is to be determined by "avoided costs calculated at the time of delivery" (what Plaintiff's Complaint refers to as a short-run avoided cost rate) or "the avoided costs calculated at the time the obligation is incurred" (what Plaintiff's Complaint refers to as a long-run avoided cost rate). *Id.* § 292.304(d)(2)(i)-(ii).[2]

Another difference between § 292.304(d)(1) and § 292.304(d)(2) that the Fifth Circuit did not appreciate is that only Subsection (d)(2) addresses the sale of capacity, which is an electrical product that values the *ability* to generate electricity, as opposed to the electric energy itself. As FERC explained in its Order implementing its PURPA regulations, non-firm generators, including wind and solar generators, are also able to sell capacity even though they are non-firm. See FERC, Order No. 69, 45 Fed. Reg. 12,214, 12,225 (1980). Thus, to the extent that *Exelon Wind* could be read to suggest that non-firm QFs may not elect the pricing options in § 292.304(d)(2) – even when state law has authorized such QFs to form a Legally Enforceable Obligation (as CPUC has) – the Fifth Circuit's decision is incorrect and reflects a grave misunderstanding of the regulatory structure.

Fourth, the Texas "90-day" rule, upheld by the Fifth Circuit in *Power Resource Group* and referenced in *Exelon Wind*, is not at issue in this case either. Under the Fifth Circuit's ruling, the CPUC could have chosen to limit the ability to form a Legally Enforceable Obligation to those QFs able to come online within ninety days, as Texas chose to do. But, instead, California has adopted a "24 month" rule.[3] As Plaintiff has previously explained, the CPUC has

---

[2] The ability of QFs (firm and non-firm) to form a Legally Enforceable Obligation and enter a contract with a utility provides advantages to both the QF and the utility. For the QF, the ability to choose a rate reflecting prices at the time the contract is entered, *id.* § 292.304(d)(2)(ii), gives it revenue predictability, and protects the QF against the possibility that the utility will petition to terminate its PURPA purchase obligations, *see id.* § 292.310. For the utility, purchasing by contract typically affords the utility the benefit of security and damages provisions in the event of QF non-performance; aids the utility's planning, as the utility can rely on delivery of the QF's output and will not need to procure that energy from elsewhere; and, if the QF chooses a rate fixed at the time of the contract under § 292.304(d)(2)(ii), provides the utility with a hedge against changing energy prices.

[3] Although the question is not presented in this case because Plaintiff is able to form a Legally Enforceable Obligation under CPUC's orders, Plaintiff would contend that *Power Resource Group* is wrongly decided. FERC regulations provide that "[e]ach qualifying facility *shall have the option* … [t]o provide energy or capacity pursuant to a legally enforceable

decided to allow proposed, as-yet-unbuilt QFs to form a Legally Enforceable Obligation, and thereby to enter into a binding long-term, fixed-price contract with utilities, so long as the QFs are able to commit by contract to be on-line and delivering power within 24 months of the contract date, plus a six month extension for regulatory delays. *See* Second Am. Compl. ¶ 39; Pltf. Mem. in Opp. to Mot. to Dismiss at 4, 10-11. That is why Plaintiff's facility, even though unbuilt, has nevertheless been approved by the CPUC to participate in the Re-MAT program and is currently first in the queue to form a Legally Enforceable Obligation with the utility. *See* Second Am. Compl. ¶¶ 66-70.

Finally, to the extent that Defendants seek to rely on *Exelon Wind* to argue that this Court should not defer to FERC's regulation recognizing that "an existing *or a proposed* facility" may be a QF, 18 C.F.R. § 292.207(a) (emphasis added); *id.* § 292.207(b)(1), that reliance is misplaced. In *Exelon Wind*, there was "no FERC Regulation or PURPA provision specifically addressing whether non-firm energy providers may form Legally Enforceable Obligations." 766 F.3d at 395. Instead, FERC had expressed its view in an informal opinion letter, and the Fifth Circuit declined to defer to that "informal determination." *Id.* at 397.

Here, however, there *is* a FERC regulation and numerous FERC Orders that specifically provide that proposed facilities can be QFs. *See* 18 C.F.R. § 292.207(a), (b)(1); *see also DeWind Novus, LLC*, 139 FERC ¶ 61,201 at 62,417-18, ¶¶ 21, 26 (2012) (granting QF status to "two as-yet unbuilt wind generation facilities"); *Lone Star Wind Power Co. v. S. Tex. Elec. Coop., Inc.*, 148 FERC ¶ 61,146 at 61,767, ¶ 10 (2014) ("Petitioners' facilities do not need to be constructed to file a Form 556 notice of self-certification"); Pltf. Supp. Mem. (ECF No. 56) at 4-5 (collecting numerous other FERC decisions treating a proposed facility as a QF).

| | |
|---|---|
| Dated: December 19, 2014 | Respectfully submitted, |
| | JENNER & BLOCK LLP |
| | By: /s/ Matthew E. Price |
| | Matthew E. Price (*admitted pro hac vice*) |

---

obligation." 18 C.F.R. § 292.304(d)(2). Thus, the plain language makes clear that states may not deny QFs that option.