UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINDING CREEK SOLAR LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL PEEVEY, et al.,<br><br>    Defendants. | Case No. 13-cv-04934-JD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 63 |

Before the Court is the third motion to dismiss in this case. The Court grants it in part and denies it in part, without further leave to amend.

**BACKGROUND**

The factual and legal issues are by now familiar to the parties and the Court. Plaintiff Winding Creek LLC ("Winding Creek") is the owner and developer of solar projects. It challenges a series of three orders issued by the California Public Utilities Commission ("CPUC") that regulate the terms on which utilities like the Pacific Gas and Electric Company ("PG&E") must purchase power from alternative energy power production facilities such as small wind farms and solar projects. Plaintiff alleges that the CPUC orders went beyond what is permitted by federal law.

The statutory background of this action was discussed in detail in the Court's two prior motion to dismiss orders. *See* Dkt. Nos. 39, 60. The Court does not repeat that discussion here, except to note that the key statute at issue is the Public Utility Regulatory Policies Act of 1978 ("PURPA"), which "was part of a package of legislation . . . designed to combat the nationwide energy crisis." *Federal Energy Regulatory Comm'n v. Mississippi*, 456 U.S. 742, 745 (1982). "Congress . . . determined that conservation by electricity utilities of oil and natural gas was essential to the success of any effort to lessen the country's dependence on foreign oil, to avoid a

repetition of the shortage of natural gas that had been experienced in 1977, and to control consumer costs." *Id*. at 746. The parties do not dispute that PURPA is the statute that draws the boundaries of the CPUC's permissible ratemaking authority.

In the first motion to dismiss order, the Court dismissed the complaint against then-defendant CPUC on the ground that "the complaint as alleged triggers the CPUC's Eleventh Amendment immunity." Dkt. No. 39 at 14. The Court also held that Winding Creek had failed to establish either constitutional or statutory standing. In the second order, the Court again granted the motion to dismiss, this time brought by the five individual CPUC commissioners who had been named as defendants, under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(1). Among other things, the order noted that the first amended complaint brought into the case two new solar facilities, but plaintiff's counsel subsequently backed away from these facilities in a supplemental brief and at the motion to dismiss hearing. The Court consequently concluded that the first amended complaint did not give defendants "fair notice" of what plaintiff's claims actually were, and so dismissed that complaint with leave to amend.

The operative complaint is now the second amended complaint ("SAC" or "complaint"). In it, Winding Creek asserts only that it is "the owner and developer of a 1.0 megawatt solar project" located in Lodi, California (the "Lodi facility"). Dkt. No. 61 ¶ 10. The two other facilities that were added in by the first amended complaint are no longer a part of the picture. The Lodi facility has not been built. *Id*. ¶ 75. Plaintiff challenges three CPUC orders -- D.12-05-035 ("the May 2012 Order"), D.13-01-041 (the "January 2013 Order") and D.13-05-034 ("the "May 2013 Order") -- on two grounds. Plaintiff challenges the 750-megawatt cap that the orders place on the subject electric utilities' collective obligation to purchase electricity from "qualifying facilities." *Id*. ¶¶ 7, 50-54. And plaintiff alleges that "the Orders provide for a purchase price that is different than the utilities' avoided costs," which plaintiff says exceeds the bounds of PURPA. *Id*. ¶ 8. Plaintiff pleads on information and belief that the prices mandated by CPUC's program are lower than the avoided costs price at which plaintiff is entitled to sell electricity pursuant to PURPA. *See id*. ¶¶ 72-73. Plaintiff consequently alleges that it has been "denied the opportunity to enter into a contract with Pacific Gas & Electric on terms required by federal law" and that the

price it was offered by PG&E pursuant to the orders is "too low to enable plaintiff to obtain the financing needed to construct the Lodi facility." *Id.* ¶¶ 73, 75.

On this basis, plaintiff asserts a single claim for "preemption (violation of the Supremacy Clause of the U.S. Constitution and 42 U.S.C. § 1983)." *Id.* at 19. Plaintiff seeks declaratory and injunctive relief, as well as "reasonable attorney fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988." *Id.* at 24-25.

Defendant CPUC commissioners have once again moved to dismiss, on the grounds that plaintiff has failed to exhaust administrative remedies as required by PURPA, to allege injury as required by Article III of the U.S. Constitution, or to state a claim upon which relief can be granted. Dkt. No. 63.

## DISCUSSION

### I. IS THE LODI FACILITY A "QUALIFYING SMALL POWER PRODUCTION FACILITY" UNDER PURPA?

At the center of defendants' motion to dismiss is the question of whether the Lodi facility is a "qualifying small power production facility" ("QSPPF") as defined by PURPA. Plaintiff's right to be in this Court depends on the answer. Defendants argue, as they have from the start, that plaintiff cannot meet Congress's definition of a QSPPF in 16 U.S.C. § 796(17)(C). On that basis, they argue that plaintiff consequently "has failed to comply with PURPA's administrative exhaustion requirement" (because a petition first must have been filed with FERC, the Federal Energy Regulatory Commission, by the owner or operator of a "qualifying small power production facility"). Dkt. No. 63 at 8. They argue further that plaintiff has no Article III injury because it is not a "small power production facility" that is eligible for benefits under PURPA; they argue also that plaintiff has failed to state a claim, because only "qualifying small power producers," *i.e.*, owners or operators of a "qualifying small power production facility," have statutory standing under PURPA. *Id.* at 11, 13.

Once again, the Court is required to wade into the murky waters of PURPA and the Federal Power Act to resolve this motion. As a starting step, the Court acknowledges that the first motion to dismiss order, issued by a prior district judge before this case was re-assigned to the

3

undersigned, held that the Lodi facility was not a "qualifying small power production facility" because it was not yet producing electricity. Dkt. No. 39 at 9-11.  The second motion to dismiss order questioned "whether a small power production facility that is not yet producing any electric energy can be deemed a 'qualifying small power production facility' under PURPA" but did not go beyond posing the question.  Dkt. No. 60 at 9.  While the Court continues to find this question to be a close call, the Court holds that the Lodi facility can, in fact, be deemed a "qualifying small power production facility" under PURPA and FERC's regulations implementing it.  To the extent the first dismissal order conflicts with this determination, it is reversed.  Fed. R. Civ. P. 54(b); *Balla v. Idaho State Bd. of Corrections,* 869 F.2d 461, 465 (9th Cir. 1989) (district court may reconsider and reverse a previous interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law).

Because this is an issue of statutory interpretation, the Court begins where it must:  with the statute itself.  As the Court previously observed, the statutory definitional framework resembles nested eggs.  Pursuant to 16 U.S.C. § 824a-3(h)(2)(B), a "qualifying small power producer" may petition FERC to bring an enforcement action, and if FERC declines, the petitioner may bring an action in the appropriate United States district court to compel a State regulatory authority such as the CPUC to comply with the requirements of PURPA.  Under 16 U.S.C. § 796(D), a "'qualifying small power producer' means the owner or operator of a qualifying small power production facility," and under 16 U.S.C. § 796(17)(C), a "'qualifying small power production facility' means a small power production facility that the Commission determines, by rule, meets such requirements (including requirements respecting fuel use, fuel efficiency, and reliability) as the Commission may, by rule, prescribe."

So turning, then, to the rules the Commission has prescribed, FERC has promulgated a regulation at 18 C.F.R. § 292.203(a) that a "small power production facility is a qualifying facility if it" meets certain size and fuel use criteria and "has filed with the Commission a notice of self-certification, pursuant to § 292.207(a)" (or has filed and been granted an application for Commission certification).  18 C.F.R. § 292.207(a), in turn, permits "an existing *or a proposed facility*" to file a notice of self-certification by using Form No. 556.  There is no dispute in this

4

1   case that the Lodi facility has properly filed a notice of self-certification and that it otherwise
2   meets FERC's requirements for qualifying facilities as set forth in 18 C.F.R. § 292.203(a). *See*,
3   *e.g.*, Dkt. No. 61 ¶ 23. The sole question presented is whether the Lodi facility can consequently
4   be considered a "qualifying small power production facility" (and Winding Creek, in turn, a
5   "qualifying small power producer"), when Congress has defined a "small power production
6   facility" as a facility which, among other things, "*produces* electric energy." 16 U.S.C.
7   § 796(17)(A) (emphasis added). Obviously, putting to one side FERC's regulations and
8   requirements, meeting the statutory definition of "small power production facility" is a necessary
9   predicate to fulfilling the statutory definition of a "qualifying small power production facility."

10   It should go without saying that the word "produces" ordinarily denotes the present tense
11   only, and the definition set forth in 16 U.S.C. § 796(17)(A) would therefore suggest that a
12   *proposed* facility cannot be regarded as a "small power production facility" (qualified or not)
13   because it is not a facility which "produces" electric energy in the here and now. If this were the
14   only use of "produces" in PURPA, the inquiry would end and plaintiff would be out of federal
15   court. But Congress used "produces" in another section of PURPA in a way that appears to
16   encompass the future tense and energy facilities yet to be built.

17   This complication arises in PURPA's definition of an "eligible" alternative power facility.
18   One way a facility can be deemed a "small power production facility" under 16 U.S.C.
19   § 796(17)(A) is if the facility is "an eligible solar, wind, waste or geothermal facility." Subsection
20   (17)(E) in turn defines an "eligible" facility as one "which *produces* electric energy solely by the
21   use, as a primary energy source, of solar energy, wind energy, waste resources or geothermal
22   resources; but only if" an application or notice "is submitted to the Commission not later than
23   December 31, 1994" or "construction of such facility commences not later than December 31,
24   1999" (or if not, "reasonable diligence is exercised toward the completion of such facility taking
25   into account all factors relevant to construction of the facility"). Although Winding Creek does
26   not claim that the Lodi facility is an "eligible" facility under subsection 17(E), it argues that
27   Congress's use of the word "produces" in that subsection -- to include facilities that had not yet
28   been built (or were not operational) at the time that statutory language was enacted -- means that

5

"produces" in subsection 17(A) should be read in the same way, *i.e.*, to include proposed, or not yet operational, facilities.

Plaintiff overreaches when it argues that "Congress expressly considered the question and concluded a yet-to-be-constructed facility *could* be a 'small power production facility,' notwithstanding that it did not already 'produce[] electric energy.'" Dkt. No. 66 at 8. There is no indication that Congress expressly considered the question that is now before this Court or otherwise carefully calibrated its use of "produces" in the way plaintiff argues. By the same token, defendants, too, overreach when they argue that another, non-controlling court has determined that "PURPA's definition of 'small power production facility' is unambiguous." Dkt. No.63 at 8-9 (discussing *S. Cal. Edison Co. v. FERC*, 195 F.3d 17, 23-27 (D.C. Cir. 1999)). As defendants acknowledge, the *Southern California Edison* case "addressed different language of the definition of 'small power production facility,'" which makes it largely irrelevant to this case. *Id.*

The Supreme Court has instructed that "[i]n ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Pursuant to that guidance, the Court finds it significant that Congress did in fact use the same word at issue -- "produces" -- to impliedly include facilities that "have the future capacity to produce" in a different part of the very same definitional statutory section at issue. The Court also finds it significant that one of the primary provisions of PURPA directs FERC to prescribe "such rules as it determines necessary to encourage cogeneration and small power production." 16 U.S.C. § 824a-3. *See also FERC v. Mississippi*, 456 U.S. at 750 (same section of PURPA "seeks to encourage the development of cogeneration and small power production facilities"). Encouraging small power production and development are necessarily forward-looking activities in which yet-to-be-built facilities will obviously play an important role.

In light of these different connotations of "produces," the pertinent question is whether the statute is "silent or ambiguous with respect to the specific issue." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984); *cf. In Def. of Animals, Dreamcatcher Wild Horse & Burro Sanctuary v. U.S. Dep't of Interior*, 751 F.3d 1054, 1065 (9th Cir. 2014) (no

need to determine what, if any, level of deference is due to agency determination when court concludes "plain language of the statute is not ambiguous"). Here, after examining the particular statutory language at issue, as well as the language and design of the statute as a whole, the Court finds that PURPA is arguably ambiguous and certainly silent with respect to whether proposed facilities may count as "qualifying small power production facilities," or, put another way, whether the word "produces" in 16 U.S.C. § 796(17)(A) is limited to the present tense or also encompasses the future tense.

Given that that is the case, the next issue for the Court is "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. "If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005). This leads to a two-part inquiry: what was FERC's "answer" to this question, and is that answer "based on a permissible construction of" PURPA?

Figuring out FERC's "answer" is not a straightforward task. FERC's regulations follow the nested-egg style of PURPA and require their own round of shell cracking to get to the yolk. The regulation promulgated at 18 C.F.R. § 292.203(a) quoted above does not directly address the question. It says only that one of the things a small power production facility must do to become a "qualifying facility" is to file "a notice of self-certification, pursuant to § 292.207(a)" (or it must instead file and be granted an application for Commission certification). It is only in 18 C.F.R. § 292.207(a) that a "proposed facility" is explicitly mentioned for the first time, as that regulation permits "an existing *or a proposed facility*" to file a notice of self-certification by using Form No. 556.

This on its own might be too thin a hook on which to hang a statutory interpretation, but FERC decisions adopt and apply the concept of qualifying facilities as including proposed facilities. The first dismissal order found that "FERC has repeatedly held that only a facility that produces electricity has qualified facility status." Dkt. No. 39 at 9. After considering the

7

amendments made in the SAC and additional FERC authorities, the Court now withdraws that finding. Although FERC does not appear to have clearly stated in any regulation that a proposed facility may be a qualifying facility, the Court finds it significant that, under 18 C.F.R. § 292.207(a), a "proposed facility" is expressly permitted to self-certify as a "qualifying facility" by filing Form No. 556, as the Lodi facility has done here. Moreover, the Court finds that the authorities that were previously cited in the first order, while not addressing this issue head-on, do contain express statements that confirm FERC's view that proposed facilities that have self-certified are qualifying facilities, even before they begin to produce energy.

In *CMS Midland, Inc.*, 50 FERC ¶ 61,098 at ¶¶ 61,277-78 (1990), FERC stated that while "the critical date" for the "meaningfulness" of the Commission's QF certification order is "the date the facility first produces electrical energy," "a Commission order *becomes effective as of the date of issuance of the order*." In this case, of course, the effective date is just as "meaningful" as the date on which the QF certification order becomes meaningful to the rest of the world, which FERC unsurprisingly stated is ordinarily the date on which the facility first starts to produce energy.

In *Georgetown Cogeneration, L.P.*, 54 FERC ¶ 61,049 at n.24 (1991), FERC even more clearly stated, albeit in a footnote, that "[c]ertification as a qualifying facility serves . . . to establish eligibility for benefits provided by the Public Utility Regulatory Policies Act of 1978, as implemented by the Commission's regulations, 18 C.F.R. Part 292." Similarly, on a petition to revoke a QF certification for a still-unbuilt facility in *Citizens for Clean Air and Reclaiming our Environment v. Newbay Corporation*, 56 FERC ¶ 61,428 (1991), FERC noted that the proposed facility which was still in the design phase might "*still be* a qualifying facility" and that it might "*remain*[] a qualifying facility" if "it continues to satisfy the Commission's ownership, operating and efficiency requirements." What FERC did not say is that the proposed facility would only become a qualifying facility if and when it met those requirements and became operational.

In sum, the Court finds that FERC has interpreted "qualifying small power production facility" to include proposed small power production facilities (and by implication, that "produces" in the definition of "small power production facilities" includes "has the capacity to

8

1  produce"). The Court also finds that this interpretation is reasonable and entitled to deference
2  under *Chevron*, 467 U.S. 837.
3        This conclusion is bolstered by the fact that the CPUC itself has interpreted "qualifying
4  facilities" the same way, despite its efforts to back away from that now in this case. The CPUC
5  orders at issue make clear that only "Qualifying Facilities (QFs)" may participate in the challenged
6  "Feed-in Tariff (FiT) Program." *See*, *e.g.*, Dkt. No.61-2 at 11, 39. It is expressly stated that
7  "[s]ince this program is developed to be compliant with PURPA, a participating generator must
8  register with FERC as a QF," and "[g]enerators may utilize FERC's self-certification process by
9  filling out FERC's Form 556." *Id*. at 102. Moreover, the CPUC orders explicitly permit proposed
10 facilities to be participants in the FiT Program (and consequently indicate that the CPUC
11 necessarily regards them as QFs), if, among other things, the proposed facilities meet "project
12 viability criteria" including an "online date" of "24 months with one 6-month extension for
13 regulatory delays." *Id*. at 70.
14       This is the sole issue determining federal jurisdiction in this case -- defendants have not
15 challenged any other aspect of the as-yet-unbuilt Lodi facility's claimed qualifying facility status.
16 Consequently, the Court concludes that the Lodi facility is a "qualifying small power production
17 facility" and plaintiff Winding Creek is a "qualifying small power producer," as those terms are
18 used in PURPA. The logical consequence of that finding is that defendants' arguments on
19 administrative exhaustion (*see* Dkt. No. 63 at 8-10), Article III standing (*see id*. at 10-11) and
20 failure to state a claim for lack of statutory standing (*id*. at 13) must be rejected.[1]

21 **II.  HAS PLAINTIFF STATED A CLAIM THAT THE CPUC ORDERS VIOLATE PURPA AND ARE PREEMPTED?**
22
23       Next is the question on the merits: has plaintiff sufficiently stated a claim that the CPUC
24 orders at issue violate PURPA, and are therefore preempted, because of the 750-megawatt limit or
25 the way prices are set in the FiT Program? Although the details alleged in the SAC have changed,

---

[1] The Court questions whether the administrative exhaustion requirement has been met for the 750-megawatt cap issue. But the parties have not briefed that issue, and so the Court leaves that question for another day.

9

the broad outlines of this claim are the same as in the initial complaint. Examining that complaint and a 12(b)(6) motion to dismiss it, the Court previously noted that while this could be a legal question amenable to judgment on the pleadings, "the briefing is simply too underdeveloped at this point to decide the issue." Dkt. No. 39 at 12. This conclusion holds. In the current motion to dismiss, defendants have devoted less than a page and a half to this merits argument. *See* Dkt. No. 63 at 14-15. While understandable in light of the parties' and the Court's prior focus on issues of standing, this means that these merits arguments will need to be the focus of the next stage of the litigation of this case. The Court finds that Winding Creek has stated for the moment a plausible claim in the SAC that the 750-megawatt cap and the pricing mechanisms set by the CPUC orders may violate PURPA, and accordingly denies defendants' motion to dismiss for failure to state a claim. The Court anticipates that these issues will be revisited in subsequent proceedings.

The Court notes that after the hearing on the present motion, both sides were allowed to simultaneously file short briefs addressing a recent PURPA-related decision in *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380 (5th Cir. 2014). *See* Dkt. Nos. 73, 74. While *Exelon Wind* might support defendants on the avoided cost issue, the case is not controlling authority and it addresses a district court order that was issued at the summary judgment stage, suggesting that a full order on the merits is more appropriate at that procedural juncture. *Exelon Wind* does not support granting defendants' motion to dismiss, although the parties are, of course, free to make arguments about that case again in the later stages of this case.

**III.   § 1983 CLAIM**

Earlier versions of the complaint contained separate claims for both violation of PURPA and preemption, and the Court ruled twice that these two claims were "legally indistinguishable" from one another. Dkt. No. 60 at 6 (citing Dkt. No. 39 at 13). In the SAC, plaintiff has opted to move forward with just the one claim for preemption, noting in the heading of that claim that it is one for "violation of the Supremacy Clause of the U.S. Constitution and 42 U.S.C. §1983." Dkt. No. 61 at 19. Defendants correctly note, however, that "[t]here is no mention of 42 U.S.C. § 1983 in the preemption claim, other than the caption and a reference to attorneys' fees in the Prayer for

Relief." Dkt. No. 63 at 15 (citing complaint at 24).

Defendants have moved to dismiss the §1983 claim, such as it is, on a number of grounds, including that a § 1983 claim cannot be based on a denial of rights under a federal statute like PURPA which "has a specific remedial scheme[,] because there exists no private right of action other than as expressly authorized by statute." Dkt. No. 63 at 15. *See also Middlesex County Sewerage Authority v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20-21 (1981) ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983. . . . [T]he existence of [] express remedies demonstrates not only that Congress intended to foreclose implied private actions but also that it intended to supplant any remedy that otherwise would be available under § 1983"). PURPA, of course, expressly provides specific remedies in cases like these. *See* 16 U.S.C. § 824a-3(h)(2)(B) (Unites States district court "may issue such injunctive or other relief as may be appropriate"). Plaintiff appears to concede the issue, as it must. *See* Dkt. No. 66 at 2 n.1 (arguing only that "Winding Creek's claim is not dependent on 42 U.S.C. § 1983").

The Court grants defendants' motion to dismiss as to plaintiff's § 1983 "claim" without leave to amend. Specifically, the Court dismisses plaintiff's prayer for relief that the Court order "reasonable attorney fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988." Dkt. No. 61 at 24-25. Plaintiff's preemption claim may go forward only to the extent it is based on alleged violations of the Supremacy Clause (because of the alleged conflicts between the challenged CPUC orders and PURPA).

**IV.   ARTICLE III STANDING**

On a final note, the Court briefly returns to the issue of Article III standing. Although the Court has already dismissed the primary bases for defendants' Article III arguments above, the Court, of course, has an independent obligation to examine its own subject matter jurisdiction. "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

Plaintiff argues that its lost "opportunity to enter into a contract with [PG&E] on terms required by federal law" is its injury in fact. Dkt. No. 66 at 15 (citing SAC ¶ 73). Plaintiff further notes that it has alleged that the "current impermissible price offered . . . 'is the only remaining barrier to Plaintiff's ability to obtain the financing needed to construct the Lodi facility.'" *Id*. (citing SAC ¶ 76).

The Court finds that these allegations are sufficient to satisfy plaintiff's obligation to plead an injury in fact that is fairly traceable to the challenged action and is likely to be redressed by a favorable decision. *See*, *e.g.*, *Indep. Living Center of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1065 (9th Cir. 2008).

## CONCLUSION

The motion to dismiss is denied, except with respect to plaintiff's allegations under 42 U.S.C. § 1983. The Court will not grant plaintiff a further opportunity to amend that claim, and defendants are consequently directed to answer the SAC by March 6, 2015.

The Court sets a case management conference for March 25, 2015 at 1:30 p.m., with a joint CMC statement to be filed by the parties on or before March 18, 2015. The parties are to meet and confer about, and address in their joint statement, what, if any, discovery is needed and a suggested case schedule for resolving the remaining merits issues. The Court notes that the regulatory issues that are involved are complex and there appears to be a long history of related actions by the CPUC and FERC. The parties should be prepared to discuss (preferably joint) proposals for presenting these issues to the Court for background and resolution in the most efficient and stream-lined manner possible. The Court advises the parties that it may also consider appointing an expert pursuant to Federal Rule of Evidence 706.

**IT IS SO ORDERED.**

Dated: February 17, 2015

_____
JAMES DONATO
United States District Judge