AROCLES AGUILAR, SBN 94753
CHRISTINE J. HAMMOND, SBN 206768
California Public Utilities Commission
505 Van Ness Avenue
San Francisco, CA 94102
Telephone: (415) 703-2682
Facsimile: (415) 703-4592
cjh@cpuc.ca.gov

Attorneys for Defendants Clifford Rechtschaffen,
Martha Guzman Aceves, Carla Peterman, Michael Picker,
and Liane Randolph, in their official capacities as Commissioners
of the California Public Utilities Commission

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WINDING CREEK SOLAR LLC,<br><br>            Plaintiff,<br><br>    vs.<br><br>MICHAEL FLORIO, CATHERINE SANDOVAL, CARLA PETERMAN, MICHAEL PICKER, and LIANE RANDOLPH, in their official capacity as Commissioners of the California Public Utilities Commission,<br><br>            Defendants. | Case No. 3:13-cv-04934 JD<br><br>**NOTICE OF URGENT MOTION AND URGENT MOTION OF CPUC DEFENDANTS FOR STAY OF THE COURT'S ORDER (ECF 161) AND JUDGMENT (ECF 162) PENDING APPEAL**<br><br>**Date Action Necessary: February 8, 2018**<br><br>Hearing Date: February 8, 2018 or earlier date as the Court will allow and calendar<br><br>Time:       10:00 a.m.<br>Courtroom:  11, 19th Floor<br>Judge:      Hon. James Donato |

**NOTICE OF URGENT MOTION AND URGENT MOTION FOR STAY OF THE COURT'S ORDER (ECF 161) AND JUDGMENT (ECF 162) PENDING APPEAL**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Local Civ. R. 7-2, Fed. R. Civ. P. 7, and Fed. R. App. P. 8(a)(1)(A), on February 8, 2018, at 10:00 a.m., **or on an earlier date that this matter may be heard**, before the Honorable James Donato in Courtroom 11 of the United States District Court for the Northern District of California in the San Francisco Courthouse, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, Defendants Commissioners of the California Public Utilities Commission (CPUC) will and do move this Court for an order granting its Urgent Motion to Stay the Court's Findings of Fact and Conclusions of Law, and Order on Summary Judgment (entered December 6, 2017) (ECF 161) (Order) and Judgment (entered December 7, 2017) (ECF 162) pending the CPUC's appeal of the Order and Judgment to the United States Court of Appeals for the Ninth Circuit. Alternatively, the CPUC requests that the Court issue a temporary stay of the Order and Judgment to allow the CPUC, by February 20, 2018, to move the Ninth Circuit for an urgent stay of the Order and Judgment and for the Ninth Circuit to rule on the CPUC's urgent motion for a stay by March 2018. The CPUC's urgent motion is based upon this Notice of Urgent Motion, the accompanying Memorandum of Points and Authorities, the CPUC Defendants' Request for Judicial Notice In Support of the CPUC Defendants' Urgent Motion for Stay Pending Appeal, the Declarations of Cheryl Lee and Christine J. Hammond In Support of the CPUC Defendants' Request for Judicial Notice In Support of CPUC Defendants' Urgent Motion for Stay Pending Appeal, the Declarations of Michael Minkler, Kristine McCaffrey, Jarod Bishop, and Elliott MacDougall In Support of the CPUC's Urgent Motion for Stay Pending Appeal, and all other pleadings and papers on file in this action, and other such argument and evidence as may be presented to the Court prior to or at the hearing on this matter.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... ii

TABLE OF ACRONYMS AND TERMS ...........................................................v

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' URGENT MOTION FOR STAY OF THE COURT'S ORDER
(ECF 161) AND JUDGMENT (ECF 162) PENDING APPEAL ..............................1

I.     INTRODUCTION ..................................................................................1

II.    BACKGROUND ...................................................................................3

III.   LEGAL STANDARD ............................................................................4

IV.    ARGUMENT ........................................................................................5

       A.    The CPUC Has a "Reasonable Probability" or "Fair Prospect" of
             Success on the Merits on Appeal. ..................................................5

             1.    Re-MAT's Market-Based Pricing Mechanism Successfully Sets
                   Avoided-Cost Rates Based on An Actual Cost of the Utility's Next
                   Increment of Procurement. ..................................................5

             2.    The Court Errs In Concluding That Re-MAT's Program Cap Does
                   Not Comply with PURPA. ....................................................9

             3.    The Court Errs in Setting Aside FERC's Reasoned Determination
                   that the Standard Contract for QFs 20 MW or Less Is the CPUC's
                   Primary PURPA Program, Satisfying the Requirements of FERC's
                   Regulations. ......................................................................9

             4.    The Ninth Circuit Urged "More Flexible Pricing Mechanisms" In
                   Lieu of Fixed Rates In the Context of Considering a 18 C.F.R. §
                   292.304(d)(2)(ii) Contracts. ...............................................12

       B.    The Order and Judgment's Conflicts with the U.S. District Court for the
             Central District of California and with the FERC Orders Present
             "Serious" Legal Issues. .............................................................13

       C.    The CPUC's Implementation of PURPA, California's Energy and
             Climate Policies, and the Broader Public Will Suffer Irreparable Harm
             Absent a Stay of the Court's Order and Judgment. ........................13

       D.    Winding Creek Will Suffer No Harm From A Court Stay. ..............14

       E.    The Public Interest Strongly Favors a Stay of the Order & Judgment. ..........14

V.     CONCLUSION ...................................................................................15

**TABLE OF AUTHORITIES**

Page

**FEDERAL CASES**

*Britton v. Co-op Banking Grp.,* 916 F.2d 1405 (9th Cir. 1990) .......................... 5

*Chevron, U.S.A., Inc. v. Natural Res. Defense Council,* 467 U.S. 837 (1984) ................ 11

*CTIA-The Wireless Association v. City of Berkeley,*
    158 F. Supp. 3d 897 (N.D. Cal. 2016) ............................................. 4, 5

*Conn. Light & Power Co. v. Fed. Power Comm'n,* 324 U.S. 515 (1945) ...................... 15

*Edelman v. Jordan,* 415 U.S. 651 (1974) ............................................ 13

*FERC v. Mississippi,* 456 U.S. 742 (1982) ......................................... 6, 11

*Fournier v. Sebelius,* 718 F.3d 1110 (9th Cir. 2013) ................................ 11

*Golden Gate Rest. Ass'n v. City and Cnty. of San Francisco,*
    512 F.3d 1112 (9th Cir. 2008) ..................................................... 5

*Himebaugh v. Smith,* 476 F. Supp. 502 (C.D. Cal. 1978) ............................... 1

*Indep. Energy Producers Ass'n. Cal. P.U.C.*, 36 F.3d 848 (9th Cir. 1994) ........... 6, 11, 12

*Leiva-Perez v. Holder,* 640 F.3d 962 (9th Cir. 2011) ............................... 4, 5

*Nken v. Holder,* 556 U.S. 418 (2009) .............................................. 4, 5

*Perfectly Fresh Farms, Inc. v. U.S. Dep't of Agric.,* 692 F.3d 960 (9th Cir. 2012) ......... 11

*Quern v. Jordan,* 440 U.S. 332 (1979) ............................................. 13

*Solutions for Utilities, Inc. v. CPUC, et al.,*
    (No. CV11-04975-SJO December 28, 2016), 2016 WL 7613906 (unpublished),
    appeal docketed, No. 17-55297 (9th Cir. March 7, 2017) ......................... 2, 13

*United States v. Morgan,* 313 U.S. 409 (1941) ....................................... 5

*Winding Creek Solar LLC v. Peevey, et al.*, 2017 WL 6040012 (unpublished), appeals
docketed, Nos. 17-17531 and 17-17532 (9th Cir. December 22, 2017) ................... *passim*

**FERC DECISIONS AND ORDERS**

*Administrative Determination of Full Avoided Costs, Sales of Power to Qualifying Facilities, and Interconnection Facilities*, Federal Energy Reg. Comm'n Rep. (CCH) 32,457, 2015 WL 8610994 (1988)..............................................................6

*Cal. Pub. Utils. Comm'n*, 133 FERC ¶ 61,059, 2010 WL 4144227 (2010) ......................3

*Cal. Pub. Utils. Comm'n*, 134 FERC ¶ 61,044, 2011 WL 182464 (2011) ......................11

*Energy Producers and Users Coal.*, 149 FERC ¶ 61,251,
    2014 WL 7205371 (2014) ...............................................................6, 12

*Policy Statement Regarding the Commission's Enforcement Role*
    *Under Section 210 of the Public Utility Regulatory Policies Act of 1978*,
    23 FERC ¶ 61,304, 1983 WL 39627 (1983) .......................................15

*Revised Regulations Governing Small Power Production & Cogeneration Facilities*,
    114 FERC ¶ 61,102, 2006 WL 250518 (2006) ....................................6

*Signal Shasta Energy Co.*, 41 FERC ¶ 61,120, 1987 WL 118362 (1987) ......................12

*So. Cal. Edison Co.*, 143 FERC ¶ 61,222, 2013 WL 2477179 (2013) ............................12

*Winding Creek Solar LLC*, 144 FERC ¶ 61,122, 2013 WL 4053221 (2013)....................9

*Winding Creek Solar LLC,* 151 FERC ¶ 61,103, 2015 WL 2151303 (2015)..........9, 11, 12

*Winding Creek Solar LLC,* 153 FERC ¶ 61,027, 2015 WL 6083932 (2015)..........9, 10, 12


**FEDERAL STATUTES AND REGULATIONS**

16 U.S.C. § 824a-3 ......................................................................................1

18 C.F.R. § 292.301 ......................................................................10, 11, 13

18 C.F.R. § 292.301(b)(1) ......................................................................10

18 C.F.R. § 292.304(d)(2)(i) ......................................................................10

18 C.F.R. § 292.304(d)(2)(ii)......................................................9, 10, 12, 13

## CPUC DECISIONS

D.12-05-035 (as conformed by D.13-01-041), 2013 WL 458041 (2013) ..........................8

D.13-05-034, 2013 WL 2446732 (2013) ..............................................................8

D.17-08-021, 2017 WL 3953989 (2017) ..............................................................4


## CALIFORNIA STATUTES AND REGULATIONS

Cal. Health & Safety Code § 30501(c) ................................................................3

Cal. Pub. Util. Code § 399.20 ........................................................................14

Cal. Pub. Util. Code § 399.20.5 ......................................................................4

Cal. Pub. Util. Code § 1735 ..........................................................................4


## OTHER AUTHORITIES

Senate Bill 350 (de Leon), Chapter 547, Statutes of 2015) .................................3

Senate Bill 32 (Pavley, Chapter 249, Statutes of 2016) ...................................3

# TABLE OF ACRONYMS AND TERMS

**399.20 FiT:** Original feed-in tariff implementing California Public Utilities Code § 399.20, enacted in 2006.

**AB 1613 CHP:** A certain type of cogeneration facility (combined heat and power system), as defined in California Public Utilities Code § 2840.2.

***Administrative Determination:*** *Administrative Determination of Full Avoided Costs, Sales of Power to Qualifying Facilities, and Interconnection Facilities,* Federal Energy Reg. Comm'n Rep. (CCH) ¶ 32,457 (March 16, 1988).

**Avoided Cost:** The incremental cost to the utility of the electricity that, but for the purchase from the QF, the utility would need to generate or purchase from "another source," as defined by 16 U.S.C. § 824a-3(b), (d); and 18 C.F.R. §§ 292.101(b)(6), 292.304(a)(2).

**Capacity**: Capacity is the ability to generate power - to actually be built and ready to generate when needed. We typically measure capacity in MWs of *potential* production. A capacity payment is a type of "stand by" payment and is made before the generator actually produces the electricity.

**CSI:** California Solar Initiative.

**Energy**: Energy is the actual electricity that is generated and transferred to the grid. An Energy payment is made when the utility needs the energy and the QF actually generates electricity to meet this need. We typically measure energy in MW-hours (MWh).

**FERC:** Federal Energy Regulatory Commission.

**FiT:** A feed-in tariff.

**IOU:** Investor-Owned Utility regulated by the CPUC.

**kW:** A kilowatt is 1,000 watts of power. A watt hour is the basic unit of measure of electric energy consumption.

**kWh**: A kilowatt hour is the amount of power necessary to produce 1,000 watts for one hour. For example, ten 100-wattlight bulbs burning for one hour uses 1,000 Wh of electric energy, or 1 kWh.

**MPR:** The Market Price Referent reflects the construction, operation and maintenance costs of a proxy generator: a new, highly efficient 500 MW capacity combined cycle natural gas turbine.

**MW:** A megawatt is a million watts of power. For example, a MW is the amount of power needed to light 10,000 100 watt bulbs.

**MWh**: A megawatt hour is the amount of electric power delivered multiplied by the time over which the energy is consumed (measured in hours). A MWh is the amount of power needed to light 10,000 100 watt bulbs for one hour.

**NEM:** The Net Energy Metering program is one of several CPUC programs in the CSI that is designed to promote small scale solar installations located at the site of the utility customer. Customers in the NEM program can choose to sell to their interconnected utility any solar energy generated in excess of their on-site consumption at the Net Surplus Compensation rate, a PURPA avoided cost.

**PG&E**: Pacific Gas and Electric Company.

**PURPA:** Public Utility Regulatory Policies Act of 1978, codified generally at 16 U.S.C. § 796 and § 824a-3.

**QF:** A qualifying facility is an eligible cogeneration or small power production facility that is a qualifying facility under the requirements specified in Subpart B of FERC's regulations (18 C.F.R. § 292.101(b)(1), § 292.203).

**QF Settlement:** The comprehensive settlement among QFs, utilities, and ratepayer representatives approved and adopted by the CPUC in December 2010 in CPUC decision D.10-12-035, 2010 WL 5650671 (Dec. 16, 2010).

**RAM:** The Renewable Auction Mechanism was established by the CPUC in D.10-12-048 as the primary contracting tool for utility procurement from smaller renewable energy projects (up to 20MW in size) that are eligible for the California Renewables Portfolio Standard Program.

**Re-MAT:** Renewable Market Adjustment Tariff, the revised feed-in tariff program implementing amendments to California Public Utilities § 399.20.

**Re-MAT Product Category:** A category of energy product in the Re-MAT program based upon when the energy can be made available. The three Re-MAT Product Categories are: as-available peaking, as-available non-peaking, and baseload.

**Re-MAT Program Period:** An interval that occurs every two months in which the utility offers Re-MAT contracts up to 5 MW of capacity in order of the queue. The Re-Mat Program Period is a mechanism to determine the price that qualified renewable generating sellers would bear.

**RPS**: The Renewables Portfolio Standard is a utility procurement requirement mandated by California law (Article 16 of the Public Utilities Code, commencing with § 399.11). The RPS

1  requires increasing utility procurement by CPUC-regulated utilities from eligible renewable
2  energy resources.

3  **SRAC:**  Short-Run Avoided Costs are the short-run marginal costs for the production of one
   additional unit of electricity:  fuel costs, and certain operation and maintenance costs.   The
4  SRAC payment is for the delivery of energy.

5  **Standard Contract for QFs 20 MW or Less:**  The power purchase agreement approved by
   the CPUC in Decision 10-12-035, and contained at Attachment A, Ex. 6 of that decision, that
6  California's regulated utilities must offer QFs of 20 MW or less to the extent that the QFs'
7  prices do not exceed the utilities' avoided costs as determined by the CPUC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' URGENT MOTION FOR STAY OF THE COURT'S ORDER (ECF 161) AND JUDGMENT (ECF 162) PENDING APPEAL**

## I.    INTRODUCTION

The Defendants Commissioners of the California Public Utilities Commission (CPUC) urgently request that this Court promptly stay both the Court's Findings of Fact and Conclusions of Law, and Order on Summary Judgment entered on December 6, 2017 (ECF 161) (Order) and the Judgment entered on the Order on December 7, 2017 (ECF 162), pending the CPUC's appeal of the Order and Judgment to the U.S. Court of Appeals for the Ninth Circuit.  Alternatively, the CPUC requests that the Court issue a temporary stay of the Order and Judgment to allow the CPUC, by February 20, 2018, to move the Ninth Circuit for an urgent stay of the Order and Judgment and for the Ninth Circuit to rule on the CPUC's urgent motion by March 2018.  *See, e.g., Himebaugh v. Smith*, 476 F.Supp. 502, 511 (C.D. Cal. 1978) (granting temporary stay "to allow the parties and the Court of Appeals to more orderly prepare and consider a motion to stay") (citations omitted).

The instant case concerns a single, as-yet undeveloped one megawatt (MW) solar photovoltaic (PV) generating facility, Winding Creek Solar LLC (Winding Creek).  Winding Creek seeks a contract with Pacific Gas and Electric Company (PG&E) in one segment of the CPUC's Renewable Market Adjusting Tariff (Re-MAT) program (i.e., the peaking as-available category, for solar PV generators).  The Order and Judgment conclude that the CPUC does not provide sufficient contracting options to Qualifying Facilities (QFs) in accordance with the Public Utility Regulatory Policies Act of 1978, 16 U.S.C. 824a-3 (PURPA).  The Court's Order and Judgment, if not stayed, however, will not enlarge the PURPA contracting options for QFs, but will instead extinguish the availability of a legally-enforceable long-term Re-MAT contract – not just for solar PV generators, but also for wind, geothermal, hydroelectric, and conduit hydroelectric generators.  And not just PG&E's Re-MAT program, but also that of Southern California Edison Company (SCE), and it may also deter other States from following California's lead in feed-in tariff programs to promote renewables.  The Order and Judgment also determine that the CPUC's Standard

Contract for QFs 20 MW or Less to be non-compliant with PURPA, thus foreclosing another contracting option for small QFs. **Absent a stay, therefore, the Order and Judgment foreclose all standard contracting options available to small stand-alone renewable generators under PURPA,[1] including generators that are at the present time desirous of, or were on the cusp of, executing Re-MAT contracts**, and cause significant energy market disruption and irreparable harm far beyond the request for relief of Winding Creek – a single one MW generator. The CPUC is informed and believes that **at least two conduit hydroelectric, two wind, and two solar PV generators are frustrated in their desire to secure Re-MAT contracts with CPUC-regulated utilities as a result of the Court's Order and Judgment**. *See* Decl. of Cheryl Lee, ¶¶ 10, 11, 12, 14, 18; Decl. of Michael Minkler, ¶¶ 9, 11, 13; Decl. of Kristine McCaffrey, ¶¶ 4-7; Decl. of Jarod Bishop, ¶¶ 3-10; and Decl. of Elliott MacDougall, ¶¶ 5-11. A stay of the Court's Order and Judgment – either by this Court or the Ninth Circuit – is necessary by March 2018 in order to permit generators whose project schedules and financing depend on promptly securing a legally-binding Re-MAT contract. *See id.*

Although California has far outpaced any state in the country in growing a market for small renewable generators and QFs, the Order and Judgment bring a significant portion of California's PURPA implementation and the promotion of small renewable generators to a grinding halt, pending the outcome of appeal or a remedial rulemaking to comply with the Order. The Order and Judgment threaten irreparable harm absent an immediate stay, and the public interest strongly favors a stay. Climate change is no longer a conceptual threat to

---

[1] Two other CPUC PURPA programs involve the Net Energy Metering program's net surplus compensation associated with customer-sited (rooftop) solar generation and the AB 1613 combined heat and power program. *See*, e.g., CPUC Mem. of P. & A. in Opp'n to Mot. for Summ. J., at 12 (ECF 90). *See also Solutions for Utilities, Inc. v. CPUC, et al.* (No. CV11-04975-SJO December 28, 2016), 2016 WL 7613906 (unpublished), *appeal docketed*, No. 17-55297 (9th Cir. March 7, 2017); CPUC Req. for Judicial Notice, Ex. 6 (ECF 129), Order Granting Defs.' Mot. for Summ. J.; and cited in Order at 20. Small stand-alone renewable generators do not qualify for either of these programs.

Californians and the world, *see, e.g.,* P.'s First Am. Compl., P 1 (ECF 41), and California is leading the effort to combat the causes of greenhouse gas (GHG)-induced climate change through its electricity procurement options. Cal. Health & Safety Code § 30501(c) (2017). The CPUC accordingly makes this urgent request to stay the Order and Judgment pending the CPUC's appeal of the Order and Judgment to the Ninth Circuit Court of Appeals.

## II.   **BACKGROUND**

The CPUC's energy procurement policies and orders play a critical role in implementing California's leadership in combating GHG-induced climate change. Senate Bill (SB) 350 (de León, Chapter 547, Statutes of 2015) requires the State to establish GHG reduction planning targets through integrated resource planning for the electricity sector and increase the State's Renewables Portfolio Standard (RPS) to 50 percent of utility supply portfolios by 2030. SB 32 (Pavley, Chapter 249, Statutes of 2016) codified a 2030 GHG emissions reduction target of 40 percent below 1990 levels.

The CPUC has long favored GHG-reducing measures in the utility industry through its procurement orders. In 2010, the CPUC sought clarification or rehearing at FERC so that the CPUC could, pursuant to PURPA, approve different – or higher – avoided-cost rates for higher fuel-efficient generators, in light of the environmental imperatives of GHG-induced climate change. In response, FERC issued a "Clarification Order" allowing States to establish different avoided-cost formulas for QFs "using various technologies on the basis of the supply characteristics of different technologies." *Cal. Pub. Utils. Comm'n*, Order Granting Clarification and Dismissing Rehearing, 133 FERC ¶ 61,059, at P 23 (2010), 2010 WL 4144227, **7 (Clarification Order). FERC also referenced the permitted use of a bidding process to establish the avoided-cost rate for a discrete procurement requirement. *See id.* at P 28, 2010 WL 4144227, **9.

In critical part on the basis of the Clarification Order, the CPUC implemented the Re-MAT program, which has been operational since October 2013 as a portion of the State of California's aggressive Renewables Portfolio Standard (RPS). Since its inception, the CPUC-regulated electric utilities have procured 256 MW of renewable generation resources

1  under the Re-MAT program.  Re-MAT's procurement targets small stand-alone renewable

2  generators and is an important part of California's RPS program, which has procured over

3  15,000 MW of renewable generation resources since 2003.

4        On December 6 and 7, 2017, however, this Court issued its Order (ECF 161) and

5  Judgment on the Order (ECF 162).  One, perhaps unintended, consequence of the Order and

6  Judgment is to enjoin the CPUC from implementing the entirety of the Re-MAT program,

7  not just procurement by PG&E for the product type for which Winding Creek is eligible.

8  For example, the Order and Judgment also prevent the implementation of the CPUC's recent

9  expansion of the Re-MAT program, which includes a new product type, conduit

10  hydroelectric generation up to 4 MW, as ordered by Cal. Pub. Util. Code § 399.20.5.  *See*

11  CPUC Decision 17-08-021, 2017 WL 3953989 (2017).[2]  While the electric utilities, other

12  parties, and CPUC staff were finalizing the implementation of the expanded Re-MAT

13  program, the CPUC suspended further progress in the Re-MAT program, effective

14  immediately, due to this Court's Order and Judgment.  *See* Decl. of Cheryl Lee, ¶ 7.

15  **III.    LEGAL STANDARD**

16        The Court's "authority to grant stays has historically been justified by the perceived

17  need to prevent irreparable injury to the parties or to the public pending review."  *Nken v.*

18  *Holder*, 556 U.S. 418, 432 (2009) (internal quotation marks and citation omitted).  Whether

19  to grant a stay is "an exercise of judicial discretion … to be guided by sound legal

20  principles" embodied in a four-factor test.  *Id.* at 433-34; and *Leiva-Perez v. Holder*, 640

21  F.3d 962, 964-65 (9th Cir. 2011); *see also CTIA-The Wireless Association v. City of*

22  *Berkeley*, 158 F. Supp. 3d 897, 900 (N.D. Cal. 2016) (*CTIA*).  *Nken* sets forth the four-factor

23  test in this determination:  (1) whether the stay applicant has made a strong showing that he

24  is likely to succeed on the merits of the appeal; (2) whether the applicant will be irreparably

25  injured absent a stay; (3) whether issuance of the stay will substantially injure the other

26  _____

27  [2] A rehearing application of CPUC Decision 17-08-021 is pending at the CPUC.  While the
   decision is not final, the utilities must implement the decision.  Cal. Pub. Util. Code § 1735.

28

parties interested in the proceeding; and (4) where the public interest lies. *Nken*, 556 U.S. at 426; *Leiva-Perez*, 640 F.3d at 964; *CTIA*, 158 F. Supp. 3d at 900. The Ninth Circuit examines these factors on a "continuum, with the relative hardships to the parties providing the critical element in determining at what point on the continuum a stay pending review is justified." *Leiva-Perez*, 640 F.3d at 970 (internal quotation marks and citation omitted).

## IV. ARGUMENT

The first factor the CPUC must satisfy for the Court to grant a stay is to demonstrate, first, a "minimum quantum of likely success" on the merits (i.e., that its appeal has a "reasonable probability or fair prospect" of success) or that its appeal raises "substantial" or "serious" legal questions and, second, the balance of hardships tips sharply in the stay applicant's favor. *Lieva-Perez*, 640 F.3d at 967-68; *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990); *Golden Gate Rest. Ass'n v. City and Cnty. of San Francisco*, 512 F.3d 1112, 1115-16 (9th Cir. 2008); *see also CTIA*, 158 F. Supp. 3d at 900.

### A. The CPUC Has a "Reasonable Probability" or "Fair Prospect" of Success on the Merits on Appeal.

#### 1. Re-MAT's Market-Based Pricing Mechanism Successfully Sets Avoided-Cost Rates Based on An Actual Cost of the Utility's Next Increment of Procurement.

The Court errs in concluding that Re-MAT's market-based pricing mechanism "strays too far from basing prices on a utility's but-for cost." *See* Order at 14. Setting aside decades of federal case law and FERC orders struggling with PURPA's complex framework and requirements, the Court states that its determination of whether Re-MAT complies with PURPA is "straightforward," and interprets the "plain meaning" of PURPA and FERC's implementing regulations. *Id.* at 5, 13. Ratemaking, however, is a legislative function, not a judicial one, "a task of striking a balance and reaching a judgment on factors beset with doubts and difficulties, uncertainty and speculation." *United States v. Morgan*, 313 U.S. 409, 417 (1941). In the context of PURPA, setting avoided-cost rates is even more complex and challenging: PURPA contains a tension between Congress' simultaneous goals of promoting fuel-efficient or renewable generation, a mandatory power purchase obligation

imposed on otherwise recalcitrant utilities, and protecting consumers from rates higher than they would otherwise pay. *See FERC v. Mississippi*, 456 U.S. 742, 759 (1982). Because of PURPA's complexity, the United States Supreme Court and the Ninth Circuit give states an unusual degree of deference in a framework of "cooperative federalism," *see id.* at 767 (1982), wherein states have "broad authority" to implement PURPA and "a great deal of flexibility" to set avoided-cost rates. *Indep. Energy Producers Ass'n v. Cal. P.U.C.*, 36 F.3d 848, 856 (9th Cir. 1994) (*IEP*).

The Court characterizes Re-MAT's market adjusting pricing mechanism as "complex" and concludes that it "strays too far from basing prices on a utility's but-for cost, which the statute and regulations require." Order at 14. However, the Court does not cite to PURPA, case law, or FERC decisions or regulations to support this legal conclusion. FERC, however, has long actively promoted market-based avoided-cost rates over administratively-set immutable rates after the hard lessons learned in the wake of realizing the "danger" of relying on long-term forecasts to set fixed rates. *See Administrative Determination*, Federal Energy Reg. Comm'n Rep. (CCH) ¶ 32,457, at 32,174, 2015 WL 8610994 (1988) (the *Administrative Determination* is cited by the Ninth Circuit throughout *IEP*); *see also, e.g., Energy Producers and Users Coal.*, 149 FERC ¶ 61,251, P 19, n.47, 2014 WL 7205371, **5 (2014) ("As-Available PPAs are … part of the implementation of the transition from a pure PURPA regime to a more market-oriented regime"); and *Revised Regulations Governing Small Power Production & Cogeneration Facilities*, 114 FERC ¶ 61,102, 2006 WL 250518, at *24 (2006) ("many sales made pursuant to bilateral contracts between QFs and electric utilities (including contracts at market-based rates) are made pursuant to a [state's] implementation of PURPA").

Moreover, Re-MAT's continued success in securing contracts with new small renewable generators belies the characterization that the bimonthly publicly-available pricing mechanism is unlawfully "complex." Indeed, continued procurement under Re-MAT underscores both the transparency and successful design of the adjusting pricing mechanism. Re-MAT pauses a utility's procurement in any product category to 5 MW for

each bi-monthly program period so that the price can be adjusted upward or downward to reflect market conditions. Re-MAT's bi-monthly 5 MW pause thus has a stabilizing effect on procurement, allowing the market to respond without locking consumers into long-term contracts that exceed avoided costs: the record in this proceeding demonstrates that prices in the peaking as-available product category started at $89.23/MWh, quickly dropped to $77.23/MWh and $65.23/MWh, went as low as $57.23/MWh only to increase with market response, and has remained for PG&E at $61.23 for over two years. *See* Trial Ex. 116 (Lee), "Spreadsheet from PG&E's ReMAT Website As of Approximately February 24, 2017"; *see also* Lee Decl., Ex. 3. While Winding Creek has argued to this court that $77.23/MWh is below PG&E's avoided cost, the facts bear out that other solar PV generators continue to accept prices below that price, with one solar PV generator accepting PG&E's offer of $61.23/MWh as recently as May 2017 (after the trial in this case) and four solar PV generators accepting SCE's offers of $45.23, $49.23, $41.23, and $37.23/MWh after the trial, with two solar PV generators signing contracts but two others accepting offers and expecting to sign contracts when the Court issued its Order. *See* Lee Decl., ¶¶ 9, 10, 15, Exs. 2 & 3. If Winding Creek's argument – that the CPUC violates PURPA with the 5 MW bimonthly cap – were to be accepted, SCE could have locked its ratepayers into paying under long-term contracts more than double the price that the market, in just a few years, deemed sufficiently profitable to justify legally-binding contracts.

The Court goes on to find, "There was no reasoned basis for CPUC's choice of increments in multiples of $4 for [bimonthly] price adjustments as opposed to any other number; the size of these price adjustments was arbitrary." Order at ¶ 10, citing Trial Tr. at 179:13-180:7. The CPUC's witness does not, however, acknowledge that the $4 adjustment is arbitrary, only that it was proposed in the underlying CPUC proceeding and that she did not know on the stand the basis for the $4 adjustment. Trial Tr. at 177-178. When pressed by the Court for the third time, the witness acknowledges that it "*could* be a reasonable assumption" that the $4 adjustment was arbitrary. *Id.* (emphasis added). A review of the record demonstrates that the $4 adjustment was based on SCE's proposal in the underlying

CPUC proceeding that prices should adjust in $2, $4, and $6 increments depending on the market responsiveness, *see* CPUC Decision 12-05-035, Ex. B of CPUC Req. for Judicial Notice (ECF 27-1), at 29-30, 2013 WL 458041 (2013), and the CPUC instead adopted a variation of SCE's proposal, *see id.* at 37-38, 45-47. The CPUC reasoned that the adjustment mechanism was consistent with the policy guidelines of setting prices "based on quantifiable utility avoided costs that stimulate market demand," containing costs and delivering maximum value, and ensuring administrative ease and lower transaction costs for the buyer, seller, and regulator, *id.* at 38, and "[enables] the FiT price to quickly respond to market conditions" and "prevent gaming by only increasing or decreasing provided that a defined level of market interest exists for a product type," *id.* at 46.

Although the CPUC decision adopting the Re-MAT program does not discuss in exacting detail why the CPUC chose the $4 increment over others within a $2 deviation therefrom, the $4 adjustment increment itself is not static but can increase depending on market conditions. *Id.* at 47-48. Indeed, the CPUC capped the monthly price adjustments to $12 "to avoid excess bi-monthly price adjustments," based on party comments in the record. CPUC Decision 13-05-034, 2013 WL 2446732, at *7 (2013). The utilities' implementation of Re-MAT thus works as the program was intended: to adjust upward or downward to stimulate the market when prices are too low to attract new sellers, and to adjust downward to reflect market conditions. Moreover, the bimonthly program period was not "randomly selected," as the Court erroneously finds. Order at 14. Instead, the CPUC considered a monthly adjustment period, but found that bimonthly program periods, coupled with decreasing the procurement limit per program period to 5 MW for PG&E, struck the right balance to ensure steady progress toward reaching procurement targets while enabling the price to reach equilibrium (readily enabling the price to decrease or increase). *See* CPUC Decision 13-05-034, 2013 WL 2446732, at *6-*8.

## 2. The Court Errs In Concluding That Re-MAT's Program Cap Does Not Comply with PURPA.

The Court erroneously concludes that the Re-MAT program does not comply with PURPA because its 750 MW statewide program cap and 5 MW program period limit for each product type for each utility violate PURPA's mandatory purchase obligation.[3] Order at 13. The Court thus disregards FERC's determinations that neither Re-MAT's 5 MW program period pause on contracting, nor its 750 MW statewide program cap, is inconsistent with PURPA. *See Winding Creek Solar LLC*, 144 FERC ¶ 61,122, 2013 WL 4053221 (2013) (Notice of Intent Not to Act on Winding Creek's Petition For Enforcement, which raised Re-MAT's 5 MW program period procurement limit (*see* Exhibit 1 of Melone Decl. (ECF 89-2)); *see also Winding Creek Solar LLC*, 151 FERC ¶ 61,103, 2015 WL 2151303 (2015) (Declaratory Order); and *Winding Creek Solar LLC*, 153 FERC ¶ 61,027, 2015 WL 6083932 (2015) (Reconsideration Order). FERC reasoned that "as long as a state provides QFs the opportunity to enter into long-term legally enforceable obligations at avoided cost rates [such as the CPUC's Standard Contract for QFs 20 MW or Less], a state may also have alternative programs that … limit how many QFs, or the total capacity of QFs, that may participate in the program [such as the CPUC's Re-MAT program]." Declaratory Order, at PP 6, 7, 151 FERC ¶ 61,103, at **2. For the reasons discussed below, the Court should accord deference to FERC's findings and orders.

## 3. The Court Errs in Setting Aside FERC's Reasoned Determination that the Standard Contract for QFs 20 MW or Less Is the CPUC's Primary PURPA Program, Satisfying the Requirements of FERC's Regulations.

The Court concludes that the CPUC's Standard Contract for QFs 20MW or Less is not a contract under 18 C.F.R. § 292.304(d)(2)(ii) and that the CPUC fails to provide such a contract to Winding Creek, in violation of PURPA and FERC's regulations. Order at 15-17.

---

[3] The Court also errs in finding that Re-MAT's pricing mechanism produces rates that have "consistently fallen over time." Order at 8. *See* discussion of record above demonstrating the Re-MAT prices fall and rise and fall according to market conditions.

1    The Court rejects the CPUC's argument that, based on the FERC's Declaratory Order and

2    Reconsideration Order, the Standard Contract for QFs 20 MW or Less, is the CPUC's

3    primary PURPA program, reasonably satisfies the rates, terms, and conditions otherwise

4    required in Subpart C of FERC's regulations (including 18 C.F.R. § 292.304(d)(2)(i) and

5    (ii)).   In so rejecting the CPUC's argument, the Court explains, "Neither order even

6    mentions, let alone meaningfully discusses, the two pricing options that are required under

7    18 C.F.R. § 292.304(d)(2)(i) and (ii)." Order at 17.

8         Concurrently with this Motion for Stay Pending Appeal, the CPUC requests judicial

9    notice of Winding Creek's *Request for Rehearing* of FERC's Declaratory Order, in which

10   Winding Creek specifically alleged that the Standard Contract for QFs 20 MW or Less

11   violates the requirements of 18 C.F.R. § 292.304(d)(2)(i) and (ii).  Winding Creek thus

12   squarely put before FERC the question of whether the CPUC complies with 18 C.F.R. §

13   292.304(d)(2)(i) and (ii).  FERC responded to Winding Creek by upholding California's

14   Standard Contract for QFs 20 MW or Less as valid implementation of FERC's PURPA

15   regulations, citing to 18 C.F.R. § 292.301.  Reconsideration Order, 153 FERC ¶ 61,027 at P

16   7 n.10.  In turn, 18 C.F.R. § 292.301(b)(1) provides that "nothing in [Subpart C of the

17   PURPA Regulations, of which 18 C.F.R. § 292.304(d)(2)(i) and (ii) are a part,] [l]imits the

18   authority of [utilities and QFs] to agree to a rate … or terms or conditions … which differ

19   from the rate or terms or conditions which would otherwise be required by this subpart,"

20   including 18 C.F.R. § 292.304(d)(2)(i) and (ii).  FERC in its Reconsideration Order

21   carefully detailed that the QF Settlement and the Standard Contract for QFs 20 MW or Less

22   were the result of an agreement via a "comprehensive settlement" between California's

23   electric utilities and the "vast majority of QFs in California."  153 FERC ¶ 61,027, at P 7

24   n.10.  The comprehensive settlement was reached in a rulemaking, and in interpreting its

25   own regulations, FERC determined that the Standard Contract's price, terms and conditions,

26   achieved through a settlement agreement, is permitted by 18 C.F.R. § 292.301.  *See id.*

27         The CPUC acknowledges that FERC's order is neither "straightforward" nor based

28   on a "plain meaning" reading of FERC's regulations, as the Court insists.  Nor is 18 C.F.R.

1 § 292.301 a clear and unambiguous regulation, given the complexity of California's

2 implementation of PURPA. *See, e.g.*, *IEP*, 36 F.3d at 852, 858-59. Critically, however,

3 this interpretation of FERC's regulations is *FERC's* interpretation, not the CPUC's.

4 Contrary to ignoring FERC's regulations, *see* Order at 17, the CPUC Standard Contract for

5 QFs 20 MW or Less is *by FERC's own determination* consistent with both PURPA *and*

6 *FERC's regulations*. *See* Declaratory Order, 151 FERC ¶ 61,103, at P 7.

7         The CPUC supports FERC's determination as consistent with the U.S. Supreme

8 Court's standard for reviewing a state's PURPA implementation, *i.e.*, whether the CPUC's

9 implementation "is reasonably designed to give effect to FERC's rules." *FERC v.*

10 *Mississippi*, 456 U.S. at 751. FERC's interpretation of its own rules should be accorded a

11 high degree of deference. Given the Court's rejection of the CPUC's reliance on FERC's

12 interpretation of 18 C.F.R. § 292.301, *see* Order at 16-18, *Chevron* deference is appropriate

13 for FERC's reasonable interpretation of PURPA if the specific issue is not directly

14 addressed or the statutory provision is ambiguous. *See Fournier v. Sebelius*, 718 F.3d 1110,

15 1118 (9th Cir. 2013). Courts allow deference to an agency's reasonable policy choices in

16 "complex and technical areas" unless contrary to the history and purpose of the statute. *See*

17 *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 845, 863 (1984). Generally,

18 FERC's declaratory orders are entitled to precedential effect. *See Cal. Pub. Utils. Comm'n*,

19 134 FERC ¶ 61,044, at P 28 n.50, 2011 WL 182464, **8 (2011). Accordingly, they are

20 subject to *Chevron* deference. *See Perfectly Fresh Farms, Inc. v. U.S. Dep't of Agric.*, 692

21 F.3d 960, 967 (9th Cir. 2012). Accordingly, FERC's determinations – that the QF

22 Settlement's Standard Contract for QFs 20 MW or less satisfies the CPUC's implementation

23 of PURPA for any small QFs, and that the CPUC has broad discretion in designing other

24 PURPA programs and avoided cost rates – should be given both precedential effect by this

25 Court and *Chevron* deference.

26

27

28

4.   **The Ninth Circuit Urged "More Flexible Pricing Mechanisms" In Lieu of Fixed Rates for 18 C.F.R. § 292.304(d)(2)(ii) Contracts.**

The Ninth Circuit considered fixed price contracts executed pursuant to 18 C.F.R. § 292.304(d)(2)(ii) in *IEP*. 36 F.3d at 852 & n.7. *IEP* concerned whether the CPUC may reevaluate FERC's prior determination that a QF meets FERC's efficiency standards, as a means for adjusting prices that exceed avoided-cost rates. The facts giving rise to the claim were that utilities, and consequently ratepayers, were "[locked]" into fixed contract rates where such rates proved in time to exceed utilities' avoided costs. *Id.*, pp. 858-59. The Ninth Circuit held that only FERC had authority to make such efficiency determinations. *Id.* Holding that the CPUC may not use efficiency determinations as a pretext for modifying fixed contract prices, the Ninth Circuit was nonetheless sympathetic to the state's dilemma that immutable contract prices compelled ratepayers to pay more than the utilities' avoided costs. *Id.* The Ninth Circuit urged the CPUC to instead pursue "more flexible pricing mechanisms" over standard contracts that "lock the Utilities" into fixed rates, in order to address the frustration that fixed-price contracts can exceed a utility's avoided costs, to the long-term detriment of consumers. *Id.*, pp. 858-59.

The CPUC's Standard Contract for QFs 20 MW or Less employs such a "more flexible pricing mechanism." The Standard Contract's formula rate, however, appears caught between the Ninth Circuit's encouragement of "more flexible pricing mechanisms" and the type of fixed, immutable rate that the Court exacts from a plain language reading of 18 C.F.R. § 292.304(d)(2)(ii). The Court's Order is thus in tension with both the Ninth Circuit in this regard and with FERC's support for the Standard Contract for QFs 20 MW or Less specifically and FERC's support of formula rates generally. *See* Declaratory Order, 151 FERC ¶ 61,103, at P 7, 2015 WL 2151303, **2; Reconsideration Order, 153 FERC ¶ 61,027, at P 7 n.10, 2015 WL 6083932, *2; *Signal Shasta Energy Co.*, 41 FERC ¶ 61,120, P 61,295, 1987 WL 118362 (Oct. 30, 1987), *2; *Energy Producers and Users Coal.*, 149 FERC ¶ 61,251, at PP 2, 16-19, n.47, 2014 WL 7205371, ** 1, 4, 5; and *So. Cal. Edison Co.*, 143 FERC ¶ 61,222, PP 6-8, 17-18, 2013 WL 2477179, **1, 2, 4 (2013).

**B. The Order and Judgment's Conflicts with the U.S. District Court for the Central District of California and with the FERC Orders Present "Serious" Legal Issues.**

The Order and Judgment present serious legal issues because they conflict with the Central District's review of the CPUC's PURPA programs (including the Standard Contract and the Re-MAT program) and determination in the CPUC's favor on the CPUC's PURPA implementation. *See* CPUC Req. for Judicial Notice, Ex. 6 (ECF 129), Order Granting Defs.' Mot. for Summ. J., *Solutions for Utilities, Inc. v. CPUC, et al.*, (No. CV11-04975-SJO Dec. 28, 2016), 2016 WL 7613906 (unpublished), *appeal docketed*, No. 17-55297 (9th Cir. March 7, 2017); cited in Order at 20. Moreover, as discussed above, when Winding Creek sought reconsideration of the FERC's denial of Winding Creek's request for enforcement, alleging that the CPUC did not offer a contract pursuant to 18 C.F.R. § 292.304(d)(2)(ii), FERC's determined that the CPUC's Standard Contract properly implements PURPA, citing to 18 C.F.R. § 301. FERC is entitled to judicial deference to its interpretation of its own regulations.

The Order is also silent on the treatment of existing executed Re-MAT contracts and Standard Contracts, their ongoing validity, and the CPUC's authority to order the utilities' rate recovery for their ongoing costs. The CPUC believes that the ongoing validity of existing contracts is consistent with the Eleventh Amendment's limit on the Court's authority to order only prospective injunctive relief against state defendants. *See Edelman v. Jordan*, 415 U.S. 651, 666-67 (1974); *see also Quern v. Jordan*, 440 U.S. 332, 338 (1979).

**C. The CPUC's Implementation of PURPA, California's Energy and Climate Policies, and the Broader Public Will Suffer Irreparable Harm Absent a Stay of the Court's Order and Judgment.**

At the present time, at least six generators have indicated to the CPUC they are willing to accept the Re-MAT program's prices offered to them and to commit to long-term Re-MAT contracts. The Court's Order and Judgment would compel the cessation of procurement of renewable generation contracts from generation technologies (Re-MAT product types) well beyond the peaking as-available product type with which Winding Creek is concerned. Winding Creek will not suffer any prejudice from a stay because

Winding Creek is eligible to accept a Re-MAT contract offer at any time as it occupies a leading position in the Re-MAT queue, though it has for three-and-a-half years declined to do so; and the procurement limits under the Re-MAT program, in which Winding Creek seeks to participate, cannot be reached before July 2019 at the soonest. *See* Lee Decl., ¶ 8.

The CPUC is for the present prevented from discharging its duty to implement Cal. Pub. Util. Code § 399.20 as a result of the Court's Order. California is on track to achieve its aggressive renewable energy goals, and the Court order slows that progress. At least six QFs are waiting to sign new contracts, but for the CPUC's suspension of the Re-MAT program as a result of the Court's Order and Judgment. *See* Section I, *supra*. With investment already made to undertake renewable development, financing arranged, the Court's Order and Judgment strongly disrupts a transparent market that had been steadily securing new renewable generation since 2013. Ultimately, those suffering the most irreversible harm would be Californians and the broader public because we are at a tipping point to address anthropogenic climate change.

**D.      Winding Creek Will Suffer No Harm From A Court Stay.**

Winding Creek's position will not change if the Court stays the Order and Judgment. Under a stay, Winding Creek could still choose to execute a Re-MAT contract or Standard Contract, or it could choose to refrain from signing a contract (as it has chosen to do for nearly four years) pending its own and the CPUC's appeal. Winding Creek will not lose its position in the Re-MAT queue for peaking as-available resources.

**E.      The Public Interest Strongly Favors a Stay of the Order & Judgment.**

The public interest is strongly served by allowing the CPUC to continue to implement the Re-MAT program. As discussed above, one of California's leading tools to combat GHG-induced climate change is through the CPUC's PURPA procurement programs. The Court's Order and Judgment nullifies the only two standard offer PURPA programs available to small stand-alone renewable generators: the Re-MAT program and the QF Settlement Standard Contract for QFs 20 MW or Less. In other words, there is

1   presently no immediate and efficient means of securing new small renewable generators

2   under contract in California, absent a stay of the Court's Order and Judgment.

3          Market players that would willingly accept the terms of the Re-MAT standard

4   contract or of the QF Settlement Standard Contract for QFs 20 MW or Less should be

5   allowed to exercise their choice to enter into these contracts.  These generators may desire to

6   lock in the contract price now, hold land and electric transmission interconnection rights,

7   committed to equipment and employment contracts, hold contingent or expiring grant funds

8   or tax credits.  Without a stay, the California market could be seriously disrupted.

9          The breadth of the Order and Judgment extinguishes the very public interests that

10  Congress sought to promote:  fuel-efficient QFs, new small renewable generating facilities,

11  and reduced reliance on fossil fuels.  But Congress also sought to empower states to

12  experiment with various means of positive change that can be shared with the entire country.

13  *Conn. Light & Power Co. v. Fed. Power Comm'n*, 324 U.S. 515, 529-30 (1945).  "Congress

14  is acutely aware of the existence and vitality of these state governments. … the 'insulated

15  chambers of the states' are still laboratories where many lessons in regulation may be

16  learned by trial and error on a small scale …."  *Id.*  Through PURPA, Congress delegated to

17  each state "broad authority to implement section 210 of [PURPA]," *IEP*, 36 F.3d at 856, and

18  states are "[necessarily]" afforded a "wide degree of latitude" in their implementation "to

19  accommodate local conditions and concerns, so long as the final plan is consistent with

20  *statutory* requirements," 23 FERC ¶ 61,304, 1983 WL 39627, **5 (1983) (emphasis added).

21  The QF Settlement and Re-MAT programs are but two of many examples of California's

22  initiative, innovation, and demonstrated success as a laboratory for QF and renewable

23  energy promotion throughout the country.  The Court's Order and Judgment, however, quell

24  the very goals that Congress and FERC promote.

25  **V.    <u>CONCLUSION</u>**

26          The Defendants CPUC Commissions urgently request that the Court stay the

27  effectiveness of the Order (ECF 161) and Judgment (ECF 162) pending the CPUC's appeal

28  of the Order and Judgment at the Ninth Circuit.

Respectfully submitted,

By: /s/   *Christine J. Hammond*
        CHRISTINE J. HAMMOND

January 3, 2018